1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**THE FOX LAW CORPORATION, INC.**
Steven R. Fox, SBN 138808
17835 Ventura Blvd., Suite 306
Encino, CA 91316
(818)774-3545; FAX (818)774-3707

Attorneys for Debtor-in-Possession

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

In re

Douce France,

       Debtor

**Case No.** 20-30095

Chapter 11

**DEBTOR'S ORIGINAL CHAPTER 11 PLAN**

Date: to be set
Time:
Ctrm:

# TABLE OF CONTENTS

## ARTICLE I.
## DEFINITIONS AND EXPLANATION OF TERMS

A. Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B. Other Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## ARTICLE II.
## SUMMARY OF THE PLAN OF REORGANIZATION

A.   What Creditors and Interest Holders Will Receive Under The Proposed Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.   Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    1.     Administrative Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    2.     Court Approval of Fees Required . . . . . . . . . . . . . . . . . . . 2

    3.     Other Administrative Claims . . . . . . . . . . . . . . . . . . . . . . 2

    4.     Priority Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    5.     Claims Entitled to Priority §507(a)(8) . . . . . . . . . . . . . . . . 3

C.   Classified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    1.     Claim of Secured Creditor . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.     Class of General Unsecured Claims . . . . . . . . . . . . . . . . . 5

    3.     Class of Insider General Unsecured Claims . . . . . . . . . . . . 5

    4.     Classes of Interest Holders . . . . . . . . . . . . . . . . . . . . . . . . 6

## ARTICLE III.
## TREATMENT OF CLAIMS

A.   Treatment of Unimpaired Claims . . . . . . . . . . . . . . . . . . . . . . . 7

B.   Treatment of Impaired Claims . . . . . . . . . . . . . . . . . . . . . . . . . 7

## ARTICLE IV.
## EFFECTUATING THE PLAN

A.   Funding for the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

B    Post-Confirmation Management . . . . . . . . . . . . . . . . . . . . . . . . 7

C.   Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## ARTICLE V.
## CASH NECESSARY ON EFFECTIVE DATE

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## ARTICLE VI.
## TAX CONSEQUENCES OF PLAN

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

i

## ARTICLE VII.
## ALLOWED CLAIMS AND DISPUTED CLAIMS,
## DOCUMENTS AND UNCLAIMED PROPERTY

A.    Allowed and Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
B.    Payments to Holders of General Unsecured Claims. . . . . . . . . . . . 8
C.    Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
D.    Unclaimed Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## ARTICLE IX.
## PENDING AND THREATENED LEGAL PROCEDURES AND CLAIMS

A.    Claims Against the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
B.    Pending and Anticipated Litigation Against Third Parties . . . . . . . . . 9

## ARTICLE X.
## ACCEPTANCE OF THE PLAN

A.    Time and Place of the Confirmation Hearing . . . . . . . . . . . . . . . . 10
B.    Deadline for Voting for Or Against the Plan . . . . . . . . . . . . . . . . . 10
C.    Deadline for Objecting to The Confirmation of the Plan. . . . . . . . . 10
D.    Identity of Person to Contact for More Information on the Plan. . . . 10
E.    Who May Object to Confirmation Of the Plan. . . . . . . . . . . . . . . . 10
F.    Who May Vote to Accept/Reject The Plan . . . . . . . . . . . . . . . . . . 11
G.    What is an Allowed Claim/Interest . . . . . . . . . . . . . . . . . . . . . . . . 11
H.    What is an Impaired Claim/Interest . . . . . . . . . . . . . . . . . . . . . . . 11
I.    Who Is <u>Not</u> Entitled to Vote . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
J.    Who Can Vote in More Than One Class. . . . . . . . . . . . . . . . . . . . 12
K.    Votes Necessary to Confirm the Plan . . . . . . . . . . . . . . . . . . . . . 12
L.    Votes Necessary for a Class to Accept the Plan . . . . . . . . . . . . . . 13
M.    Treatment of Nonaccepting Classes . . . . . . . . . . . . . . . . . . . . . . . 13

## ARTICLE XI.
## Post-Discharge Temporary Injunction For Equity Holders
## and Officers, Directors and Shareholders

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## ARTICLE XII.
## The Equity Auction

A.    Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

B.    Who May Bid? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

C.    Binding the Purchaser to the Plan's Terms . . . . . . . . . . . . . . 16

D.    Auction Procedures; Opening Bid; Overbids . . . . . . . . . . . . . 16

E.    Proof of Ability to Bid and to Overbid . . . . . . . . . . . . . . . 18

F.    Timing Requirements For Winning Bidder and Back Up
       Bidder; Penalty for Failure to Perform . . . . . . . . . . . . . . . . 18

G.    Obtaining Further Information About the Equity Auction . . . . . . . 18

H.    What is Being Purchased; Application of Winning Bid to Administrative
       Claims, Priority Claims and Then to the Plan Projections . . . . . . . . **19**

## ARTICLE XIII.
## EFFECT OF CONFIRMATION OF PLAN

A.    Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

B.    Revesting of Property in the Debtor . . . . . . . . . . . . . . . . . . . 19

C.    Modification of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

D.    Quarterly Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

E.    Post-Confirmation Conversion/Dismissal . . . . . . . . . . . . . . . . 20

F.    Final Decree . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

G.    Valuation of Debtor's Assets; Releases of Security Interests . . . . . . 21

H.    Waiver . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.    General Settlement of Claims and Interests . . . . . . . . . . . . . . . 22

J.    Corporate Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

K.    Amendments to Claims On or after the Effective Date . . . . . . . . . 22

L.    Discharge of Claims and Termination of Interests . . . . . . . . . . . . 23

Note: The Effective Date shall be 30 days following entry of an order confirming
the Plan unless the Debtor elects an earlier date.

Note: The Plan provides for a Temporary Post-Discharge Injunction

iii

# ARTICLE I.

# INTRODUCTION

The document you are reading is the Debtor's Original Plan (the "Plan").  It is accompanied by the Debtor's Original Disclosure Statement ("Disclosure Statement").  Please read this document and the Disclosure Statement carefully. All references in the Plan to exhibits refers to exhibits that are attached to the Disclosure Statement.

Definitions that are applicable in the Plan are found in the Appendix which follows the Plan.  All terms not defined in the Appendix shall have the meanings given to them by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules of the Northern District of California.

# ARTICLE II.

# THE PLAN OF REORGANIZATION

## A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan

As required by the Code, the Plan classifies claims and interests in different classes according to their right to priority. The Plan states if each class of claims or interests is impaired or unimpaired.  The Plan states each class' treatment.

**Exhibit "A"** to the Disclosure Statement is the Debtor's projection during the plan term with creditors' payments.  Below is a summary of payments to creditors.

## B.    Unclassified Claims

Certain types of claims are not placed into voting classes; they are not classified. They are not considered impaired and do not vote on the Plan, as they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has <u>not</u> placed the following claims in a class.

### 1.    Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the case, allowable under §507(a)(1).  All administrative claims be paid on the Effective Date of the Plan, unless a claimant agrees to a different treatment.

The following chart lists <u>all</u> of the Debtor's § 507(a)(1) administrative claims and their treatment under the Plan.

| <u>Name</u> | <u>Amount Owed</u> | <u>Treatment</u> |
|---|---|---|
| The Fox Law Corporation, Inc. | $60,000 (estimated) | Paid in equal installments of $6,000 in months 1 to 10. |
| Bankruptcy Court Clerk's Fees | $500 | Paid in full on the Effective Date if owed. |
| Office of the U. S. Trustee [1] <u>SEE FOOTNOTE</u> | $1,625 (estimated) | Paid in full on the Effective Date if owed. |
| | TOTAL | **$8,125** |

## 2.    Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional must file and serve a fee application and the Court must rule on it. Only those fees the Court allows will be required to be paid under this Plan.

The Debtor will need to pay $8,125 in administrative claims on the Effective Date.  Counsel has agreed to be paid over time.  In exchange, Douce will not seek to close the case until counsel's fees have been paid in full as allowed.

## 3.    Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by §507(a)(8) which requires each holder of such this priority tax claim receive the present value of the claim in deferred cash payments, over a period not exceeding five years from the date the bankruptcy petition was filed.

---

[1]    Post-confirmation, the Debtor will pay U.S.T. quarterly fees as they come due until entry of the final decree.

| Class No. | Description | Impaired | Treatment |
|-----------|-------------|----------|-----------|
| N/A | Franchise Tax Board<br><br>•Total Claim Amount: $1,640.73<br>•Priority Claim Amount: $1,640.73<br>•(Per POC No. 8)<br>•Claim based on failure to file tax return for 12/2019 and for 12/2020 | n/a | Pymt interval: lump sum<br>Pymt amt/interval $1,640.73<br>Balloon pymt    None<br>Begin date    M1<br>End date    M1<br>Interest rate %    N/a<br>Total payout    $1,640.73 |
| N/A | I.R.S.<br><br>•Scheduled Amount: $0<br>•Claim Amount: $2,907.47 (POC # 7):<br>•Total Priority Claim Amount: $2,907.47<br>•Type of Tax and Assessment Date: FICA, 1st Q. 2020 | n/a | Pymt interval:    Lump sum<br>Pymt amt/interval $2,907.47<br>Balloon pymt    None<br>Begin date    M1<br>End date    M1<br>Interest rate %    N/A<br>Total payout    $2,907.47<br><br>(Debtor believes its former payroll company paid this tax and will investigate.) |

### 4.    Other Priority Claims

The Debtor believes that it has no priority claims under §507(a)(3) - (a)(7).

## C.    Classified Claims and Interests

### 1.    Class of Secured Claim

A secured claim is secured by liens on estate property.  The senior secured creditor is Heritage Bank of Commerce, has the earliest filed financing statement. Susquehanna Salt Lake and Channel Partners Capital both recorded later financing statements.  Douce's assets at liquidation are worth $60,858 and in reorganization, $120,000.  Only Heritage Bank's claim is secured.

All creditors asserting secured claims, other than Heritage Bank shall, within 30 days of the entry of the confirmation order, provide releases of their security interests to the Debtor in a form ready to record. The failure to do so constitute a material breach of the Plan.

| Class No. | Description | Insider | Impaired | Treatment |
|---|---|---|---|---|
| 1 | Secured claim of: Name = Heritage Bank of Commerce<br><br>Collateral description: Substantially all of the Debtor's assets except vehicles.<br><br>•Collateral value = $120,000 - per agreement with Bank<br>•Proof of Claim Amount: $389,269.03<br>•Portion of claim secured: $120,000<br>•Scheduled amount: $388,264.17<br><br>*NOTE: Heritage Bank has elected the §1111(b) election. Its secured and unsecured treatments have been negotiated and are detailed in this treatment box.* | No | Yes.<br><br>Yes.<br><br>Creditor is not being paid in full per the terms of its contract with the Debtor. | <u>On Secured Claim. §1111(b)</u><br>Bank's secured claim to be $120,000, amortized over 20 years, all due and payable at the end of 10 years from the Effective Date.<br>•Monthly payment amount: $1,022.48<br>•Beginning Date: Month 1<br>•Interest Rate: 8.25%<br>•Balloon Payment: End of year 10<br>•Amortization over 20 years<br><br><u>On Unsecured Claim. §1111(b)</u><br>Unsecured claim to be $236,298.48, paid over 20 years at $984.58/mo. At end of year 10 following Effective Date, Debtor to pay a balloon payment to pay all monies then due on the unsecured claim.<br>•Monthly payment amount: $984.58<br>•Beginning Date: Month 1<br>•Interest Rate: N/A<br>•Balloon Payment: End of year 10<br><br>If claimant seeks to add attorneys' fees or any other charges other than principal and interest to its claim, then the Court must approve the fee request and their reasonableness (and/or any other charges) with a motion seeking approval filed no later than 60 days following entry of the order confirming this Plan. Failure to seek such review shall constitute a waiver of all such fees and or other charges. The Debtor believes that this creditor is not entitled to add attorneys' fees to its claim because the claim is under-secured and because of the §1111(b) election. |

Except as to Heritage Bank of Commerce's recorded security interest, all financing statements, liens, pledges, deeds of trust or other security interests against any property of the Estate or the Debtor shall be fully released and discharged. All right, title, and interest of any holder of such interests shall revert to the Reorganized Debtor.

### 2.    Class of General Unsecured Claim

General unsecured claims are unsecured claims not entitled to priority under

§507. The following chart identifies their treatment. **Exhibit "H"** (a listing of claims) has information about each of these claims and **Exhibit "A"** (the plan payment projections) has further information concerning their payment.

This is a pot plan. Creditors will receive a pro-rata share of a fund totaling $23,755.78 created by Debtor's payment of $439.92 per month for 54 months starting at month 7 of the Plan. Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class.

| CLASS | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|-------|-------------|----------------|-----------|
| 2 | General unsecured claims:<br><br>Total claims scheduled: $279,177.17<br><br>Total proofs of claims filed: $84,332.67<br><br>Reconciled amount of claims (Considering scheduled claims and claims filed: $237,557.84 | Class is impaired as its claims are not being paid pursuant to the terms of any contracts. | • Pymt interval = Monthly<br>• Pymt amt/interval =$446.45/mo<br>• Begin date =M7<br>• End date =M60<br>• Interest rate % = 0%<br>• Total payout = $23,755.78<br>• Total payout % = See below<br><br>THIS IS A POT PLAN. The Debtor estimates it will pay 10% of all claims. However, the failure to pay 10% to Class 2 members shall not constitute a default under the Plan. Claims may come in higher than anticipated. A creditor may file what is called a "rejection claim" which may lower the percentage. A creditor may attempt to add legal fees or other charges. The Debtor is paying a stated amount of money only. 10% may not be the actual percentage paid.<br><br>If any unsecured creditor adds attorneys' fees or other charges other than principal and interest to a claim, then the claimant must, within 60 days following the Effective Date, file a motion to have the fees or other charges allowed by the Court. Prior to allowance, the Court must rule on the reasonableness of the attorneys' fees and/or any other charges. The failure to timely seek this judicial review shall constitute a waiver of all such fees and or other charges. |

### 3. Class of General Unsecured Claims - Insider

General unsecured insider claims are unsecured claims not entitled to priority under §507(a). An insider is a person with a close relationship with the debtor, other than a creditor-debtor relationship.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 4 | Joanne Ferreira for monies provided to the Debtor.<br><br>Scheduled amount $152,457.78 | Yes | $100 in month 60. |

## 4. Class of Interest Holders

Interest holders are the parties who hold ownership interest in the Debtor. The following chart identifies the Plan's treatment of the class of interest holders.

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 5 | Mauro/Joanne Ferreira, holders of 100% of the Debtor's equity. | If the unsecured creditor class votes to accept the plan, then the Ferreiras equity claim is unimpaired.<br><br>If the unsecured class votes to reject the Plan, then the Ferreiras equity claim is impaired. | If Class 2 votes to accept the Plan, the Interests of this Class shall be treated as follows: The Interest Holders will contribute new value of $20,000 to the Plan and in exchange receive the equity Interests in the Reorganized Debtor. The new value monies shall be transferred to Debtor's counsel's client trust account not less than 10 days prior to the date set for the confirmation hearing.<br><br>If on the other hand, unsecured creditors vote to reject the Plan and the Court determines that as a result of such rejection, their treatment does not comply with the absolute priority rule, then the prepetition Interests in the Debtor will be cancelled and the Reorganized Debtor's Interests will be sold at an Equity Auction whose rules are described *infra*. Proceeds of the Equity Auction will be paid pro rata first to Administrative Claims, next to priority tax claims, and then at the Purchaser's discretion. Whomever the Purchaser and/or its Owner turn out to be, they shall take no draws or equity distributions until all monetary obligations under this Plan have been fulfilled.<br><br>Notwithstanding who obtains the equity in the Reorganized Debtor the equity shall not fully vest in the Purchaser(s) until after 2 years of payments under the Plan to holders of unsecured creditors have been made. |

# ARTICLE III.

## TREATMENT OF CLAIMS

### A.    Treatment of Unimpaired Claims

unimpaired claims shall receive the treatment described above.

### B.    Treatment of Impaired Claims

Impaired claims shall receive the treatment described above.

# ARTICLE IV

## EFFECTUATING THE PLAN

### A.    Funding for the Plan

The Plan will be funded by the Debtor's business operations.  The Debtor's business operations, including funds on hand at the Effective Date and an infusion of new monies, are described in the Disclosure Statement.

The Debtor does not intend to sell any assets in order to fund the Plan. Post-confirmation, with Heritage Bank's consent, the Debtor intends to sell excess equipment and pay proceeds (net of any brokerage charges) to the Bank that shall reduce the principal balance of the secured claim by the amount of proceeds paid.

### B.    Post-Confirmation Management

Mauro Ferreira will be Douce's president and will operate its business.  He will take the draw specified in the Disclosure Statement and in the Projections.

### C.    Disbursing Agent

Mauro Ferreira shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. He shall serve without bond and shall receive no compensation for these services.

# ARTICLE V

## CASH NECESSARY ON EFFECTIVE DATE

All cash necessary on the Effective Date to fund distribution to unclassified claims, shall be available in a sufficient amount to fund the payments.

# ARTICLE VI

## TAX CONSEQUENCES OF PLAN

The Disclosure Statement contains a discussion of potential tax consequences that may arise from confirmation.  Please refer to that discussion.

# ARTICLE VII

## ALLOWED CLAIMS AND DISPUTED CLAIMS,

## DOCUMENTS AND UNCLAIMED PROPERTY

### A.    Allowed and Disputed Claims

Allowed Claims are those defined in §§502 and 1111 of the Code consisting of those claims that are undisputed or to which disputes have been resolved either by the Bankruptcy Court or by agreement between Debtor and the claimant.

THERE MAY BE CLAIMS WHICH THE DEBTOR MAY DISPUTE AND THE READER SHOULD BE ADVISED THAT THE AMOUNT OF EACH CREDITOR'S CLAIM OR THE ENTIRE CLAIM MAY BE DISPUTED AFTER CONFIRMATION OF THIS PLAN.

All objections to claims or interests will be filed no later then the deadline permitted under the Bankruptcy Code.

### B.    Payments to Holders of General Unsecured Claims

If, after the first payment or distribution to a holder of a Disputed Claim and such claimant becomes an unsecured non priority claimant or within thirty (30) days of the entry of a Final Order allowing such claim, the holder of such claim will receive from the Disbursing Agent a Pro Rata payment of its unsecured claim which equals the Pro Rata payments previously made to holders of unsecured claims.

### C.    Documents

On the Effective Date, or as soon as practicable thereafter, and if applicable, the Debtor will deliver to the holders of Allowed Claims impaired by this Plan, any promissory note(s), security agreement(s), or perfection document(s) to which this Plan entitles such holders.  In the absence of a timely objection, the distribution of such documents shall be deemed to be in compliance with the Plan.

### D.    Unclaimed Property

Any distributions made by the Disbursing Agent pursuant to the Plan which are returned to the Disbursing Agent for any reason whatsoever will be deposited in an interest-bearing escrow account by the Disbursing Agent.  At any time, upon the presentation by a holder of an Allowed Claim of identification which satisfies the Disbursing Agent, in his sole and absolute discretion, that funds are held for such presenter's benefit, the Disbursing Agent shall release such funds to such presenter. Ownership of any such returned funds which are not claimed within six months shall vest in the reorganized Debtor.

## ARTICLE VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

All executory contracts and unexpired leases not <u>already</u> expressly assumed or rejected by the Debtor by the Confirmation Hearing shall be rejected by the Debtor on the Effective Date.

<u>The Debtor assumes only those lease(s) listed in the Disclosure Statement to be assumed</u>.  All other executory contracts and leases are rejected.

The Court shall retain jurisdiction to approve Debtor's rejection of unexpired leases or executory contracts.  Any claim for damages or other claims by parties to such rejected contracts or leases shall be included in the unsecured non-priority class and the bar date for filing a proof of claim with respect to such rejection damages shall be thirty (30) days after the entry of the Confirmation Order.

## ARTICLE IX.

## PENDING AND THREATENED LEGAL PROCEDURES AND CLAIMS

### A.    Claims Against the Debtor

See the Disclosure Statement.

### B.    Pending and Anticipated Litigation Against Third Parties

No litigation is pending or anticipated.  The Disclosure Statement describes any potential litigation which it may bring.  The Reorganized Debtor will hold the

right under the Plan to initiate and prosecute any of Debtor's claims against third parties not released under this Plan including any preferential transfer or fraudulent conveyance claims.  The Bankruptcy Court shall retain jurisdiction over these actions to the fullest extent permitted under the Code and case law.

## ARTICLE X.

## ACCEPTANCE OF PLAN

### A.    Time and Place of the Confirmation Hearing

The hearing where the Court will determine whether or not to confirm the Plan will take place on _____,  2020, at __:00 _.m., in Courtroom ___, 16th Floor, U.S. Bankruptcy Court, 450 Golden Gate Ave. San Francisco.

### B.    Deadline for Voting for or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot to:

The Fox Law Corporation

17835 Ventura Blvd., Suite 306

Encino, CA 91316

Your ballot must be received by _____, 2020, by 5:00 p.m. local time or it will not be counted.

### C.    Deadline for Objecting to the Confirmation of the Plan

Objections to the confirmation of the Plan must be filed with the Court and served upon the Debtor's counsel by _____.

### D.    Identity of Person to Contact for More Information on the Plan

Any interested party desiring further information about the Plan should contact his/her/its own attorney.

### E.    Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

### F.    Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### G.    What Is an Allowed Claim/Interest

A creditor or interest holder must first have an **allowed claim or interest** to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

The bar date for filing a proof of claim for claims other than tax claims and other certain claims was May 26, 2020.  A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.  The Disclosure Statement shows how the Debtor has characterized your claim or interest.

*If your claim was scheduled as dispute, contingent or unliquidated and you did not file a proof of claim, then you will have no distribution under the Plan and your claim will be discharged.*

### H.    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is **impaired** under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of what they are owed.

In this case, the Proponent believes all classes are impaired. They are entitled to vote for or against plan confirmation. Holders of claims in these classes are entitled to vote to accept or reject the Plan. They are impaired because these claims are being paid out over time, without interest, and/or are not being paid in full. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

## I.    Who Is <u>Not</u> Entitled to Vote

The following four types of claims are **not** entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) certain claims entitled to priority pursuant to Code §507(a)(1) through (7); and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code §507(a) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. Even if your claim is of the type described above, you may still have a right to object to the confirmation of the plan.

## J.    Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim (if impaired) and another ballot for the unsecured claim.

## K.    Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders in that class, and (2) all impaired classes have voted to accept the Plan, unless the

Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later.

### L. Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (½) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, vote in favor of the Plan. A class of interests is considered to have "accepted" the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, vote to accept the Plan.

### M. Treatment of Non-accepting Classes

Even if only one of the impaired classes votes to accept the proposed Plan, the Court may still confirm the Plan if it treats the non-accepting class(es) as required by §1129 of the Code. It has a series of requirements with which the Plan must comply with in order to be approved. The various requirements include: the plan complies with applicable provisions of the Code; the plan has been proposed in good faith; with respect to each impaired class of claims, each holder of claim in such class has accepted the plan or will receive value that is not less than the amount that such holder would have received if the Debtor was liquidated in chapter 7; as to the classes, each class votes to accept the plan or said class is not impaired under the plan; specific treatment of administrative claims; that at least one class of claims that is impaired under the plan has accepted the plan; and confirmation of the plan is not likely to be followed by Debtor's liquidation.

If all of the elements required by §1129(a) are met (other than the requirement that each class has accepted the plan or is not impaired under the plan §1128(a)(8)), the Debtor may request that the Court confirm the plan if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims that is impaired and has not accepted the plan. §1129(b). The condition that a plan be fair and equitable with respect to an unsecured class includes the following requirements: each holder of a claim in the class will receive,

as of the Effective Date, property or monies equal to the allowed amount of the claim, or no monies will be paid to junior claimants and/or interest holders will not retain any interest(s) under the plan. Confirming the Plan without acceptance of all impaired classes is called a "cramdown." All claims except those held by administrative claimants can be crammed down.

## ARTICLE XI.

### Post-Discharge Temporary Injunction For Equity Holders
### and Officers, Directors and Shareholders

The order confirming the Plan shall act as a temporary injunction restraining any creditor, party-in-interest or any third party from pursuing any officer, director, shareholder, employee, managing person or responsible person of the Debtor (the "enjoinees") on account of any pre-bankruptcy claim where both the Debtor had liability and an enjoinee also has liability of any nature. Claims which arose during this case or after are not within the scope of the injunction.

Upon confirmation of the Plan, all creditors of Debtor shall be temporarily enjoined from proceeding against any enjoinee, individually, or in their official capacities, for the collection of all or any portion of their claims. This temporary injunction will remain in effect during the Plan term.

Should the Debtor be in default under the Plan to a creditor and if that violation remains uncured for a period of 30 days after receipt by the Debtor of written notice from the party affected by such violation, the affected party may file a declaration of default as to the particular debtor and, if the Debtor does not file an opposition within 20 calendar days, then the creditor may upload an order dissolving the temporary injunction but only as to the affected party. The Bankruptcy Court shall have exclusive jurisdiction to extinguish or modify the temporary injunction. The Debtor may seek to continue or revive the injunction.

To the extent they may have any liability, all enjoinees shall <u>not</u> be discharged or released from any liability for such claims and debts under the Plan.

However, absent a further order of the Court, the exclusive remedy for payment of any claim or debt shall be payment through the Plan.  The temporary injunction is not meant to discharge any third party's liabilities.

The injunction applies to the individual person and also to their assets both real property and personal property.

Section §105(a) permits the approval of the temporary injunction during the time plan payments are being made especially where, as here, the injunction is an essential means to implement the Plan (§123(a)(5)), the injunction confers material benefits on the Debtor's estate, the injunction is in the best interest of the vast majority of the creditors, the estate and the equity interest holders, and issuing the injunction will be instrumental in promoting plan feasibility.

The order shall contain findings the Court has the jurisdiction to issue the injunction, that it is consistent with §§105, 524(e), 1123(a)(5) and 1129 of the Code, and issuing the injunction is in the best interests of all parties in interest.

## ARTICLE XII.

### The Equity Auction

**A.    Introduction**

If unsecured creditors vote to reject the Plan and the Court determines that as a result of such rejection the Plan, but for this section, does not comply with the absolute priority rule, then the interests in the Debtor will be cancelled and the interests of the Reorganized Debtor will be sold at an Equity Auction as described below.

Notwithstanding anything else, the proceeds of the Equity Auction will be paid pro rata first on account of administrative claims, next to priority claims, then to plan payments and last, pursuant to the discretion of the Purchaser of the interest in the Reorganized Debtor.

The successful Purchaser and any individual that owns or controls the Purchaser ("Owner") must apply all revenues of the Reorganized Debtor to satisfy

15

all of the Plan obligations of the Reorganized Debtor as and when set forth in this Plan (including the payment of all claims identified in the Plan, all operating expenses identified in the projections attached as **Exhibit A**), and the Purchaser and its Owner shall take no draws or equity distributions, beyond those identified in the Disclosure Statement and in the Projections until all obligations under this Plan have been fulfilled by the Reorganized Debtor.

**B.     Who May Bid?**

In the event of an Equity Auction, only qualified bidders may bid in the Equity Auction.  To qualify for bidding, any person wanting to bid must  demonstrate to Debtor's counsel (1) knowledge and experience in Debtor's industry and (2) the financial ability to meet all requirements of the Reorganized Debtor under this Plan. The Debtor's present Interest Holders are automatically deemed a qualified bidder.

**C.     Binding the Purchaser to the Plan's Terms.**

The Purchaser and its Owners will be bound by this Plan to use all revenues of Debtor to make all payments required under this Plan and to perform all other obligations of the Reorganized Debtor before taking any draw or equity distribution beyond those identified in the Projections.  If a Purchaser or its Owner sells the Reorganized Debtor's assets other than in the ordinary course of business, then the Purchaser and its Owner must invest sufficient monies into the Reorganized Debtor to, at that time, pay all claims provided for in the Plan in one lump sum.

**D.     Auction Procedures; Opening Bid; Overbids**

If the Equity Auction occurs, then the Debtor shall sell the equity Interests in Reorganized Debtor in accordance with the following procedures: Within ten Business Days after Debtor learns that unsecured creditors voted to reject the Plan, the Debtor shall hire financial consultants to market the equity Interests in Reorganized Debtor, subject to Court authorization;

1.     Debtor's financial consultants shall have 30 calendar days after retention and Court authorization to market the equity Interests

("<u>Marketing Period</u>").  The Marketing Period can be extended if the financial consultants, in their reasonable discretion, and in consultation with Debtor's counsel, believe that additional time is needed to market the equity Interest;

2.      The Debtor shall schedule an auction sale of the equity Interests (the "<u>Equity Auction</u>") at 9:00 a.m. no earlier than five Business Days following the Marketing Period.  The Equity Auction shall be held at the building address of Debtor's counsel.  All participating bidders must comply with all health and safety rules including masking and social distancing. Bidders or their agents must be personally present to bid.

3.      Debtor counsel shall provide written notice to the Court and to the creditors of the results of the Equity Auction.

4.      In addition to the notice provided by dissemination of this Plan and by Debtor's financial consultants in their marketing, Debtor shall, on the first Business Day after the Marketing Period file a notice of the Equity Auction with the Bankruptcy Court with the case caption and indicating the date and time of the Equity Auction.  This Section shall be deemed sufficient notice of the Equity Auction and no further or additional notice shall be required.

All bidders must agree in writing and in advance of the bidding to comply with all the terms and provisions of this Plan.

The Equity Auction shall be conducted by Debtor's counsel in a manner consistent with this Plan and reasonably calculated, in Debtor's sole discretion, to obtain the highest and best sales price.  The opening bid at the Equity Auction shall be the Ferreira bid of $20,000 which will be escrowed with Debtor's counsel as a condition of the Ferreiras being permitted to make the opening bid.  The first overbid must be for a sum not less than $5,000 which, to qualify and to be considered in the Equity Auction, also must be wired (i.e., no checks) and escrowed

with Debtor's counsel no later than five Business Days prior to the Equity Auction. All prospective bidders must wire and escrow this first overbid sum in the same manner to also qualify and be considered in the Equity Auction.

E.    **Proof of Ability to Bid and to Overbid**

To address overbidders who lack the ability to immediately pay the winning bid (if they are the high bidder), all overbidders must provide to Debtor's counsel written proof of their ability to overbid, in the form of bank statements showing the previous 90 days' bank balances, letters from bank officers attesting to bank balances or similar financial information. Debtor's counsel shall keep this financial information confidential. The requirement applies to the Ferreiras.  The failure to provide such information timely to Debtor's counsel shall, in the sole discretion of Debtor's counsel, disqualify such overbidder from being qualified to bid.

Subsequent overbids shall be in increments of no less than $2,500.

F.    **Timing Requirements For Winning Bidder and Back Up Bidder; Penalty for**
      **Failure to Perform**

The winning bidder must wire the full amount of the winning bid to Debtor's counsel within forty-eight business hours of submitting the winning bid.  If the winning bidder fails to timely pay the amount of the winning bid in this manner, the winning bidder shall forfeit 50% of the first overbid amount it wired to Debtor's counsel.  The next highest bidder will have forty eight business hours after notice to pay the amount of its highest bid at the Equity Auction and to become the successful bidder.  Any bidder who becomes a winning bidder shall forfeit the amount of its first bid in the event such winning bidder does not timely pay the amount of its highest bid upon being provided with notice that it is the wining bidder.  Counsel for Debtor shall have reasonable discretion to extend these deadlines if, in Counsel's opinion, an extension is warranted.

G.    **Obtaining Further Information About the Equity Auction**

Any party interested in attending and/or bidding at the Equity Auction may

obtain additional details regarding the time, place and process of the Equity Auction by contacting Debtor's counsel.

**H.    What is Being Purchased; Application of Winning Bid to Administrative Claims, Priority Claims and Then to the Plan Projections**

The Purchaser in the Equity Auction is purchasing the equity Interests in Reorganized Debtor, and obligating itself to also pay any fees, costs, and taxes associated with said purchase.  The Purchaser is not purchasing or otherwise acquiring anything other than the equity Interests in the Reorganized Debtor (e.g., the Purchaser is not purchasing or acquiring the Debtor's assets).

The Reorganized Debtor shall pay all proceeds of the Equity Auction as provided for herein above in Article III and then in accordance with the Projections.

ARTICLE XIII.

EFFECT OF CONFIRMATION OF PLAN

**A.    Discharge**

On the Effective Date, the Debtor shall be discharged of liability for payment of debts incurred before Plan confirmation, to the extent specified in 11 U.S.C. §1141.  However, the discharge will not discharge any liability the Plan imposes.

**B.    Revesting of Property in the Debtor**

Except as provided in the Disclosure Statement and Plan, confirmation of the Plan revests all of the property of the estate in the Debtor.

Except as specifically or expressly provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, all property of the Debtor's Estate, all of the Debtor's Causes of Action, and any property acquired by the Debtor pursuant to the Plan shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances except for that lien held by Heritage Bank of Commerce.

On and after the Effective Date, except as otherwise specifically provided in the Plan, the Reorganized Debtor may operate its business and may use, acquire,

19

or dispose of property and compromise or settle any claim, interest, or cause of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**C.      Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before confirmation.  However, the Court may require a new disclosure statement and/or revoting on the Plan.

The Proponent of the Plan may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modifications after notice and a hearing.

**D.      Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. §1930(a)(6) after confirmation shall be paid to the United States Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to chapter 7.

**E.      Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case after confirmation if there is a default in performing the Plan.  If the Court orders, the case converted to Chapter 7 after confirmation, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7, estate. The automatic stay will be reimposed upon the revested property, but only to the extent that relief from stay was not previously authorized by the Court during this case.

The order confirming the Plan may also be revoked under very limited circumstances. The Court may revoke the order if the order of confirmation was procured by fraud and if the party in interest brings an adversary proceeding to

revoke confirmation within 180 days after the entry of the order of confirmation.

**F.    Final Decree**

Once the estate has been fully administered as referred to in F.R.B.P. Rule 3022, Debtor shall file a motion to obtain a final decree to close the case.

**G.    Valuation of Debtor's Assets; Releases of Security Interests**

The Order confirming the Plan shall provide as follows:

1.    Finding that the security interest asserted by Heritage Bank is secured to $120,000 and that the balance of Heritage Bank's claim is unsecured.  Upon payment of the $120,000 plus interest, Heritage shall promptly release its security interest in the Debtor's assets.

2.    Finding that no other entity or person, including Susquehanna Salt Lake, LLC (owed approximately $23,543, financing statement recorded December 17, 2018) and Channel Partners Capital, LLC (owed approximately $83,000, financing statement recorded April 11, 2019) holds a claim secured by any asset of the Debtor including personal property and monies.

3.    Finding that any entity or person that asserts an interest in the Debtor's personal property assets including monies is an unsecured creditor.

4.    Within 30 days of the date of entry of an order confirming the Debtor's Plan, and notwithstanding any appeal, Susquehanna Salt Lake, LLC, Channel Partners Capital, LLC and any other entity or person that asserts a security interest in the Debtor's assets including monies shall execute and record at their expense any and all  documentation with any governmental entity, including the California Secretary of State, necessary and/or required to release any security interests that it may assert in the Debtor's assets.

3.    The findings in this sub-section and the requirement to release security interests shall be binding on all entities and persons and any assignee

or agent notwithstanding any failure to include the finding and requirement in the order confirming the Debtor's Plan.

**H.    Waiver**

The Confirmation Order shall contain a waiver of any stay of enforcement otherwise applicable, including pursuant to Bankruptcy Rules 3020(e), and 7062.

**I.    General Settlement of Claims and Interests**

Pursuant to §1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims and Interests and Causes of Action resolved pursuant to the Plan.

**J.    Corporate Action**

Each of the matters provided for by the Plan involving the corporate structure of the Debtor or corporate or related actions to be taken by or required of the Debtor or the Reorganized Debtor, whether taken prior to, as of, or after the Effective Date, shall be deemed authorized, approved, and ratified without the need for any further corporate action or without any further action by the Debtor or the Reorganized Debtor, holders of Claims or Interests, directors, managers, or officers of the Debtor or the Reorganized Debtor. Such actions include (1) the adoption and filing of the Reorganized Debtor Organizational Documents, (2) the appointment of a new Board and (3) the authorization, issuance and distribution of the  Securities to be authorized, issued and distributed pursuant to the Plan.

**K.    Amendments to Claims On or after the Effective Date.**

On or after the Effective Date, no Claim may be filed or amended without prior authorization of the Bankruptcy Court or the Reorganized Debtor, and, to the extent such authorization is not received, any such new or amended Claim filed shall be deemed disallowed in full and expunged without any further notice to or action, order, or approval of the Bankruptcy Court

**L.** **Discharge of Claims and Termination of Interests**

EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN AND EFFECTIVE AS OF THE EFFECTIVE DATE: (1) THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND INTERESTS SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION, DISCHARGE, AND RELEASE OF ALL CLAIMS AND INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON SUCH CLAIMS FROM AND AFTER THE COMMENCEMENT DATE, AGAINST THE DEBTOR OR ANY OF ITS ASSETS, PROPERTY, OR ESTATE; (2) THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AND INTERESTS, NOTWITHSTANDING WHETHER ANY SUCH HOLDERS FAILED TO VOTE TO ACCEPT OR REJECT THE PLAN, VOTED TO ACCEPT THE PLAN OR VOTED TO REJECT THE PLAN; (3) ALL CLAIMS AND INTERESTS SHALL BE SATISFIED, DISCHARGED, AND RELEASED IN FULL, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(g) OF THE BANKRUPTCY CODE; AND (4) ALL ENTITIES SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTOR, THE DEBTOR'S ESTATE, THE REORGANIZED DEBTOR, EACH OF THEIR SUCCESSORS AND ASSIGNS, AND EACH OF THEIR ASSETS AND PROPERTIES ANY OTHER CLAIMS OR INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS, OR ANY ACT OR OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED PRIOR TO THE EFFECTIVE DATE.

1

2 Date: August 28, 2020

3         Douce France, Inc., Debtor-in-Possession

4         Name and Identity of Plan Proponent

5

6         _____

        Mauro Ferreira, President
7         Signature of Plan Proponent

8

9         /s/ Steven R. Fox
        Signature of Attorney for Plan Proponent
10         Steven R. Fox, attorney for Debtor-in-Possession

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT

DEFINITIONS

**A.    Definitions**

For the purposes of the First Amended Plan ("Plan" herein), the following terms shall have the following indicated meanings unless the context clearly requires otherwise:

A.        "<u>Administrative Expense</u>" means any expense incurred by Debtor in the ordinary course of business during the bankruptcy case, including an expense to a person employed pursuant to Sections 327, 328, and 1103 of the Bankruptcy Code or a person or entity seeking reimbursement or compensation pursuant to Section 503(b) of the Bankruptcy Code.

B.        "<u>Allowed</u>" means the amount of any claim or interest as determined pursuant to 11 U.S.C. § 502.

C.        "<u>Allowed Claim</u>" or "<u>Allowed Interest</u>"  means a claim  against or interest in the Debtor's estate respectively, to the extent that a proof of claim or interest was (a) timely filed; (b) deemed filed pursuant to 11 U.S.C. § 1111(a); or (c) late filed with leave of the Bankruptcy Court after notice and an opportunity for hearing given to Debtor and their counsel, and (I) the claim or interest is not a Disputed Claim or Disputed Interest or (ii) the claim or interest is Allowed by the entry of a Final Order of the Bankruptcy Court.

D.        "<u>Bankruptcy Code</u>" means title 11 of the U.S. Code.

E.        "<u>Bankruptcy Court</u>" means the U.S. Bankruptcy Court serving as a unit of the U.S. District Court for the Northern District of California, having jurisdiction over this case.  Bankruptcy Court shall also mean the U.S. District Court for the Northern District of California if a proceeding is withdrawn to that court.

| | |
|---|---|
| 1 | F. "Bar Date" means that date fixed by the Bankruptcy Court as the last |
| 2 | date for Creditors to file proofs of claim or interest; provided, however, |
| 3 | if the Court extends the time for filing any given proof of claim or |
| 4 | interest, the date so set shall be the Bar Date with respect to such |
| 5 | claim, but only with respect to such claim. |
| 6 | G. "Clerk" means the Clerk of the United States Bankruptcy Court for the |
| 7 | Northern District of California. |
| 8 | H. "Confirmation Date" means the date on which the Bankruptcy Court |
| 9 | conducts its first hearing on the confirmation of the Plan. |
| 10 | I. "Confirmation Hearing" means that hearing held pursuant to Sections |
| 11 | 1128 and 1129 of the Bankruptcy Code to consider confirmation of |
| 12 | the Plan. |
| 13 | J. "Confirmation Order" means the Final Order entered by the |
| 14 | Bankruptcy Court confirming the Debtor's Plan. |
| 15 | K. "Creditor" means any person having any claim against the Debtor or |
| 16 | the Estate. Claim is defined at 11 U.S.C. §§101(4) and 102(2). |
| 17 | L. "Debtor" shall mean the Debtor in this case. |
| 18 | M. "Disbursing Agent" means that person designated to make |
| 19 | disbursements under the Plan. |
| 20 | N. "Disclosure Statement" herein means Debtor's Disclosure Statement as |
| 21 | approved by the Bankruptcy Court as having provided adequate |
| 22 | information pursuant to Section 1125 of the Bankruptcy Code. |
| 23 | O. "Disputed Claim or Disputed Interest" means an alleged claim against |
| 24 | or interest in the Estate which is or could be the subject of an objection |
| 25 | filed by a party in interest on or before the applicable date fixed by the |
| 26 | Plan. |
| 27 | P. "Effective Date" means thirty days after entry of the Confirmation |
| 28 | Order, (1) unless the Debtor elects to advance the Effective Date or (2) |

unless entry of the Confirmation Order is stayed pending appeal, in which case the Effective Date shall be the first business day during which implementation of the Plan is not stayed pending resolution, denial, or dismissal of such appeal so long as that first business day is more then thirty days after entry of the Confirmation Order.

Q.      "Estate" means the entire estate created by the filing of Debtor's Chapter 11 petition, pursuant to 11 U.S.C. § 541(a).

R.      "Final Order" means an order of the Bankruptcy Court as to which (a) the time for appeal has expired and no notice of appeal has been timely filed, or (b) any appeal or petition for writ of certiorari that has been filed has been finally resolved, denied or dismissed.

S.      "Petition Date" means the date the Debtor commenced its voluntary bankruptcy case under Chapter 11 of the Bankruptcy Code.

T.      "Plan" means the Plan of Reorganization proposed by Debtor, as now written or later modified, supplemented, corrected, or amended in accordance with §1127.

U.      "Priority Claim" means any claim, other than an Administrative Expense, which is entitled to priority under Section 507(a) of the Bankruptcy Code.

V.      "Pro Rata" means proportionately so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim or Allowed Interest to the total amount of consideration distributed on account of all Allowed Claims or Allowed Interests of the class of which such particular Allowed Claim or Allowed Interest is a member is equal to the ratio of the amount of such particular Allowed Claim or Allowed Interest to the total amount of all Allowed Claims or Allowed Interests (other than Allowed Claims or Allowed Interests subject to an election to receive less favorable treatment) within the class of which such

particular Allowed Claim or Allowed Interest is a member.

W.      "<u>Secured Creditor</u>" means a person who holds a claim secured by real or personal property of Debtor to the extent of the value of the property securing the claim as provided in Section 506 of the Bankruptcy Code.

X.      "<u>Unsecured Creditor</u>" means a person who holds an unsecured claim against Debtor or either of them that arose at the time of or before the Petition Date.

## B.      Other Terms

All terms used in the Plan and not defined herein will have the meaning assigned to them by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules of the Northern District of California.