Wm. Thomas Lewis/State Bar No. 116695
**ROBERTSON & LEWIS**
Attorneys at Law
PO Box 1257
Gilroy, CA 95021-1257
Telephone: (408) 294-3600

Attorneys for Secured Creditor
**HERITAGE BANK OF COMMERCE**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
(San Francisco Division)

| | |
|---|---|
| In re:<br><br>**DOUCE FRANCE**,<br><br>Debtor | Case No. 20-30095-HLB<br><br>Chapter 11<br><br>SECURED CREDITOR HERITAGE BANK OF COMMERCE'S OBJECTION TO DEBTOR'S PLAN AND DISCLOSURE STATEMENT<br><br>Date: October 15, 2020<br>Time: 10:00 a.m.<br>Place: United States Bankruptcy Court<br>    Courtroom 19<br>    450 Golden Gate Avenue<br>    16th Floor<br>    San Francisco, CA 94102<br>Judge: Hon. Hannah L. Blumenstiel |

## HISTORICAL FACTS

Debtor **DOUCE FRANCE** (the "Debtor") and secured creditor **HERITAGE BANK OF COMMERCE** (the "Secured Creditor") are parties to an US Small Business Administration ("SBA") term loan (the "Loan"; denoted as SBA loan no. 9693835007 and Secured Creditor's loan no. 9483000100), which Loan was in the original principal amount of $375,000.00. Among other things, the loan documents evidencing the Loan (copies of which are attached to Secured Creditor's proof of claim 5 filed on April 8, 2020, the "Loan Documents") grant Secured Creditor a blanket and first priority security interest in substantially all of Debtor's personal property assets (the "Collateral"), as such Collateral is more fully described in the Loan Documents.

1

Debtor has not objected to Secured Creditor's claim no. 5 (the "Claim"), such that Secured Creditor's Claim is an "allowed claim" under Sections 502(a) and 1111(b)of the Code. On September 18, 2020, Secured Creditor filed as dkt 113 notice of its election under 11 USC §1111(b)(2) to treat its Claim as a secured claim, to the extent that such claim is allowed.

On August 31, 2020, Debtor filed its First Amended Disclosure Statement as dkt 101 (the "Disclosure Statement") and its Chapter 11 Plan as dkt 102 (the "Plan"). Since that time, Debtor and Secured Creditor have been meeting and conferring in an effort to reach agreement on a consensual plan and disclosure statement. While great progress has been made in such efforts, such discussions have not yet yielded a second amended disclosure statement and an amended plan reflecting such agreements and modifications as may be required to garner Secured Creditor's support and approval. Expecting that such a second amended disclosure statement and an amended plan will be forthcoming, and to preserve Secured Creditor's rights in connection with the existing Disclosure Statement and Plan, Secured Creditor offers and submits the following objections to the existing Disclosure Statement and Plan.

**OBJECTIONS**

**Disclosure Statement**:

<u>Disclosure Statement page 1, line 12</u>. The sentence reads "The Debtor seeks to make payments under a plan paying unsecured creditors either dividend overtime." The sentence is incomplete and does not specify the alternative to payment of a dividend.

<u>Disclosure Statement page 4 line 28 through plan page 5 line 2</u>. Secured Creditor was surprised to learn of Debtor's relationship with an affiliate, Mauro Specialties, to provide payroll, human resources administration, or similar services. To Secured Creditor's knowledge, no order approving the engagement of such a professional has been sought or obtained under Section 327 of the Code. The Disclosure Statement and Plan should provide that not only does Debtor no longer do business with Mauro Specialties, but it will not do so during the pendency of the plan and that it will

2

not engage any other affiliated entity to provide similar payroll, human resources administration, or similar services.

<u>Disclosure Statement page 5 line 27</u>.  In connection with the disclosure that Debtor maintains appropriate insurance, Debtor is not in fact maintaining the flood insurance prescribed and required by the Loan Documents.

<u>Disclosure Statement page 13, table</u>.

*Claim Amount*.  Secured Creditor's Claim as filed was $389,269.03.  The Disclosure Statement and Plan fail to account for Secured Creditor's entire $389,269.03 Claim.  Debtor purports to break Secured Creditor's claim into a secured portion of Secured Creditor's 1111(b) Claim of $120,000 and an unsecured portion of Secured Creditor's 1111(b) Claim of $236,298.48, yielding a total sum attributable to Secured Creditor's 1111(b) Claim of $356,298.48, not the actual amount of Secured Creditor's 1111(b) claim of $389,269.03.

*Claim Allocation*.  Additionally, Secured Creditor objects to the allocation of its claim proposed by Debtor as between the secured portion of Secured Creditor's 1111(b) Claim and the unsecured portion of Secured Creditor's 1111(b) Claim (assuming that the total claim issue is resolved and remedied).  Secured Creditor asserts that the secured portion of Secured Creditor's 1111(b) Claim is in the sum of $160,000 and the unsecured portion of Secured Creditor's 1111(b) Claim is in the sum of $229,269.03.  Absent amendment to reflect such allocation or some other allocation mutually agreeable between Secured Creditor and Debtor, Secured Creditor objects on the grounds that its total Claim is not properly addressed and further objects to the allocation proposed by Debtor between the secured portion of Secured Creditor's 1111(b) Claim and the unsecured portion of Secured Creditor's 1111(b) Claim in that the secured portion of Secured Creditor's 1111(b) Claim of $120,000 under the Plan and Disclosure Statement understates the value of Secured Creditor's Collateral on the petition date.

3

ROBERTSON & LEWIS
PO Box 1257
Gilroy, CA 95021-1257
(408) 294-3600

*Interest Rate and Other Terms on Secured Portion.* Debtor proposes to pay Secured Creditor 8.25 percent interest rate on the secured portion of Secured Creditor's 1111(b) Claim and to amortize such secured portion of Secured Creditor's 1111(b) claim over 20 years, due in ten years after plan confirmation.

"If a Chapter 11 plan proposes payment of an interest rate below the "range of prevailing market rates for loans of comparable risk and duration" or which does not take into account the actual risk of that loan, confirmation must be denied because the deferred payments will not yield the present value of the claim and, therefore, the plan is not "fair and equitable" and will not satisfy § 1129(b)(2)(A)(i)(II). *In re Seasons Partners, LLC*, 439 B.R. 505, 517 (Bankr. D. Ariz. 2010). Here, the contract interest rate on the Loan is presently 8.25% and the Loan is due in mid-2028. The proposed Plan does nothing to reflect the increased risk under the Plan. "The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan."); *In re Bloomingdale Partners*, 155 B.R. 961, 977 (Bankr. N.D. Ill. 1993) ('[A] "fair and equitable" rate of interest under §1129(b)… should be an appropriate risk-free rate plus an adjustment that compensates for the inherent risks imposed on the secured creditor by the Debtor's plan.'" *Till v. SCS Credit Corp.*, 541 U.S. 465, 479, 124 S. Ct. 1951, 1961, 158 L. Ed. 2d 787 (2004)

If Debtor and Secured Creditor are unable to reach agreement on the secured portion of Secured Creditor's 1111(b) Claim, then Secured Creditor further objects that the 8.25% proposed interest rate to be paid on the secured portion of the 1111(b) Claim and the 20 year amortization with a ten year call both render the Plan not "fair and equitable" and objects that same do not satisfy §1129(b)(2)(A)(i)(II)

If Debtor and Secured Creditor are able to reach agreement on the secured portion of Secured Creditor's 1111(b) Claim, then Secured Creditor agrees with this treatment to pay interest

ROBERTSON & LEWIS
PO Box 1257
Gilroy, CA 95021-1257
(408) 294-3600

4

on the secured portion of its 1111(b) Claim at 8.25 percent interest and to amortize such secured portion of Secured Creditor's 1111(b) claim over 20 years, due in ten years after plan confirmation.

*Terms on Unsecured Portion.* Consistent with Section 1111(b) treatment, Debtor proposes to pay Secured Creditor no interest on the unsecured portion of Secured Creditor's 1111(b) Claim and to amortize such unsecured portion of Secured Creditor's 1111(b) claim over 20 years, due in ten years after plan confirmation. If Debtor and Secured Creditor are able to reach agreement on the unsecured portion of Secured Creditor's 1111(b) Claim, then Secured Creditor agrees with this treatment. If Debtor and Secured Creditor are unable to reach agreement on the unsecured portion of Secured Creditor's 1111(b) Claim, then the court will need to determine what term and call are required to make the Plan "fair and equitable."

*Attorneys' fees*. The requirement to submit an attorneys' fees application within 60 days is agreeable, but same should be limited to review of post-petition attorney's fees in this bankruptcy case and Secured Creditor objects to the inclusion of such a requirement for fees incurred outside of this bankruptcy case. Fees incurred in the state court action and pre-petition are outside of the scope of this court's approval and the Disclosure Statement's provision on attorneys' fees in the table should be modified to limit same to post petition attorneys' fees in this case.

Disclosure Statement page 14, line 6. Because of prior violations of loan documents by Debtor in obtaining the various hard money loans, and consistent with the provisions of Section 1129(c) of the Code, Secured Creditor wants confirmation in the Disclosure Statement and Plan that the Loan Documents shall continue in full force and effect, except to the extent that such Loan Documents are expressly modified by the Plan. Accordingly, in line 6 on page 14 after the word "consequences.", Secured Creditor believes that the following should be inserted as a new sentence: "Except as expressly modified by the Plan, the Debt Instruments (as defined below) of Heritage Bank of Commerce shall continue in full force and effect."

ROBERTSON & LEWIS
PO Box 1257
Gilroy, CA 95021-1257
(408) 294-3600

Disclosure Statement page 15, line 1. Consistent with the objection above to Disclosure Statement page 14, line 6, the sentence in the Disclosure Statement page 15, line 1 should start with "Except for the Debt Instruments of Heritage Bank of Commerce,".

Disclosure Statement page 16, table. The Plan and the Disclosure Statement should confirm that the proposed contribution of the $20,000 by Debtor's owner, Mauro and Joanne Ferreira, shall be an equity contribution and not a loan and that such contribution shall not be entitled to receive interest or return, until the plan is fully performed.

Like in Disclosure Statement page 27 lines 25 – 28 with respect to any equity purchaser, Secured Creditor wants some limitation recited and included on insider draws, salaries, and distributions during dependency of the plan (absent court order approving such increase) and same should be limited to the $3500 recited on Disclosure Statement page 17, lines 2 to 5. In this regard, Secured Creditor notes that Exhibit A frame 3 of the declaration in support of the Disclosure Statement says $6700 is to be paid per month for officers, paid $3350 semi-monthly, but Exhibit A frame 6 says $3500 per month. This inconsistency need to be corrected to reflect the $3500 monthly sum.

Disclosure Statement page 26, lines 10 through 22. Secured Creditor would like to avoid ongoing case management costs associated with state court action. Accordingly, Secured Creditor proposes that, upon execution of a reaffirmation of guarantee and agreement to waive costs in the underlying state case in a form and content acceptable Secured Creditor, Secured Creditor would have the right to dismiss without prejudice the underlying state court action. Secured Creditor would agree that the injunction would extend to any action by Secured Creditor to refile any state court action.

Disclosure Statement page 32 item G.1, lines 19-23. Consistent with the foregoing, this first paragraph should be modified to read "Finding that Secured Creditor's claim is the subject of an 1111(b) election, that such claim is an allowed claim, that the portion of the 1111(b) claim asserted

by Secured Creditor that is secured is $160,000 (or such other sum as may be agreed by the parties or established by the court), and that the balance of Secured Creditor's 1111(b) claim is unsecured."

With respect to the second paragraph, this paragraph is incorrect and should be deleted. Upon payment of secured portion of the 1111(b) Claim plus interest, Secured Creditor will not be releasing its lien. The 1111(b) election specifies that Secured Creditor will retain its lien, until the entirety of the claim is paid (both the secured and unsecured portions of the claim). The distinction between secured and unsecured only applies to the provision for payment of interest. Under 1111(b), however, the full amount of claim must be paid before the lien needs to be released.

"[W]hen an undersecured creditor makes the §1111(b)(2) election, its allowed secured claim is equal to its total claim rather than the value of the collateral. In order for a reorganization Plan to now comply with the cram down requirements of § 1129(b)(2)(A)(i)(I), the electing creditor must retain a lien equal to the total amount of its claim. The lien is not stripped down by § 506(d). Subsection (II) of § 1129(b)(2)(A)(i) guarantees an electing creditor a stream of payments equal to its total claim. However, the stream of payments need only have a present value "of at least the value of such holder's interest in the estate's interest in such property," i.e., the value of the collateral. 11 U.S.C. §1129(b)(2)(A)(i)(II). In other words, the present value of the electing creditor's stream of payments need only equal the present value of the collateral, which is the same amount that must be received by the nonelecting creditor, but the sum of the payments must be in an amount equal at least the creditor's total claim." *First. Fed. Bank of Cal. v. Weinstein* (In re Weinstein), 227 B.R. 284, 294 (9th Cir. 1998).

This second paragraph needs to be modified to reflect that concept or, more accurately, should be deleted.

**Plan**: Conforming changes in the Plan to reflect the corresponding changes in the Disclosure Statement should be made, including (without limitation) the following:

7

Article II, Section B-1 Counsel fees. Secured Creditor objects to the proposal to pay counsel's claimed fees of $60,000 in ten monthly installments of $6000 each during months 1-10. No fee application has been submitted, reviewed, or approved by the court. This is a relatively small case and such fees are quite large, compared to the size of the business. In any event, Secured Creditor objects to the very short term over which such fees (once approved) are to be paid.

Article II, Section C-1-Secured Creditor Heritage Bank. The table of the treatment of Secured Creditor's 1111(b) claim needs to be modified to reflect whatever changes are made in the corresponding Disclosure Statement Table on page 13.

Article II, Section C-4- Interest Holders. Like with the Disclosure Statement, the Plan should confirm that the proposed contribution of the $20,000 by Debtor's owner, Mauro and Joanne Ferreira, shall be an equity contribution and not a loan and that such contribution shall not be entitled to receive interest or return, until the plan is fully performed.

Article IV, Section B – Post Confirmation Management. Like in Disclosure Statement page 27 lines 25 – 28 with respect to any equity purchaser, Secured Creditor wants some limitation recited and included on insider draws, salaries, and distributions during dependency of the plan (absent court order approving such increase) and same should be limited to the $3500 recited on Disclosure Statement page 17, lines 2 to 5. In this regard, Secured Creditor notes that Exhibit A frame 3 of the declaration in support of the Disclosure Statement says $6700 is to be paid per month for officers, paid $3350 semi-monthly, but Exhibit A frame 6 says $3500 per month. This inconsistency need to be corrected to reflect the $3500 monthly sum. Additionally, this Section should provide that during the pendency of the plan Debtor will not engage any other affiliated entity to provide payroll, human resources administration, or other services to or for the benefit of Debtor.

Article XI – Post Discharge Injunction. Consistent with the objection on Disclosure Statement page 26, lines 10 through 22, the Plan should provide that, upon execution of a reaffirmation of guarantee and agreement to waive costs in the underlying state case in a form and

8

ROBERTSON & LEWIS
PO Box 1257
Gilroy, CA 95021-1257
(408) 294-3600

content acceptable Secured Creditor, Secured Creditor would have the right to dismiss without prejudice the underlying state court action. Secured Creditor would agree that the injunction would extend to any action by Secured Creditor to refile any state court action.

Article XIII, Section G - Valuation of Debtor's Assets, Etc. Consistent with the objection on Disclosure Statement page 32 item G.1, lines 19-23, the first paragraph of this Section should be modified to read as follows: "Finding that Secured Creditor's claim is the subject of an 1111(b) election, that such claim is an allowed claim, that the portion of the 1111(b) claim asserted by Secured Creditor that is secured is $160,000 (or such other sum as may be agreed by the parties or established by the court), and that the balance of Secured Creditor's 1111(b) claim is unsecured." At the end of such paragraph, same should further provide "Except as expressly modified by the Plan, the Debt Instruments (as defined in the Disclosure Statement) of Heritage Bank of Commerce shall continue in full force and effect."

Consistent with the objection on Disclosure Statement page 15, line 1, the third paragraph of this Section should start with "Finding that, ***except for the Debt Instruments of Heritage Bank of Commerce***, …."

Consistent with Heritage's 1111(b) election and the balance of the objections above, the fourth paragraph of this Section should be modified to reads as follows: "Within 30 days of the date of entry of an order confirming the Debtor's Plan, ***except for any security interests or liens held by Heritage Bank of Commerce***, and notwithstanding any appeal, Susquehanna Salt Lake, LLC, Channel Partners Capital, LLC and any other entity or person that asserts a security interest in the Debtor's assets including monies shall…."

Article XIII, Section L – Discharge Consistent with Plan Article XIII, Section A, subpart (3) of this Article XIII, Section L should be modified to read as follows: ALL CLAIMS AND INTERESTS SHALL BE SATISFIED, DISCHARGED, AND RELEASED ~~IN FULL, AND THE DEBTOR'S LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED~~

9

ROBERTSON & LEWIS
PO Box 1257
Gilroy, CA 95021-1257
(408) 294-3600

~~COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(g) OF THE BANKRUPTCY CODE,~~ ***TO THE EXTENT SPECIFIED IN 11 U.S.C. §1141***

<u>Definitions Attachment</u>. The Definitions Attachment, Section B, should be modified to read as follows: "All terms used in the Plan and not defined herein will have the meaning assigned to them by ***<u>the Disclosure Statement</u>***, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or the Local Bankruptcy Rules of the Northern District of California."

## CONCLUSION

For the reasons set forth above, Secured Creditor requests that this court deny approval to the existing Disclosure Statement and Plan and direct Debtor to make amendments to same to address the foregoing objections.

If the court wants to set the matter for evidentiary hearing, then Secured Creditor respectfully requests that a briefing, discovery, and hearing schedule be set.

October 6, 2020                                            **ROBERTSON & LEWIS**

By: <u>/s/ *Wm. Thomas Lewis, Esq*</u>
Wm. Thomas Lewis, Esq.,
Attorneys for Secured Creditor **HERITAGE BANK OF COMMERCE**

ROBERTSON & LEWIS
PO Box 1257
Gilroy, CA 95021-1257
(408) 294-3600

10

Case: 20-30095    Doc# 118    Filed: 10/06/20    Entered: 10/06/20 13:29:59    Page 10 of 10