**THE FOX LAW CORPORATION, INC.**
Steven R. Fox, SBN 138808
17835 Ventura Blvd., Suite 306
Encino, CA 91316
(818)774-3545; FAX (818)774-3707
srfox@foxlaw.com

Attorneys for Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | CASE NO. 20-30095-HLB |
| Douce France, | CHAPTER 11 |
| Debtor | **MOTION SEEKING (1) APPROVAL OF DEBTOR'S DISCLOSURE STATEMENT ON A FINAL BASIS AND (2) CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION; DECLARA-IONS IN SUPPORT** |
| | Date: January 21, 2021<br>Time: 10:00 a.m.<br>Ctrm: Courtroom 19<br>(Remote Hearing Only) |

**COMES NOW** the Debtor and Debtor-in-Possession (the "Debtor" or "Douce") with its Memorandum and Motion.

Attached to this Motion is the Debtor's supporting Memorandum.

Here is a summary of voting and treatments.

- Class 1, Heritage Bank of Commerce voted to accept the Plan (the "Plan").

- Classes 2A and 2B, General Unsecured Creditors and de minimus creditors. One ballot was cast accepting the Plan.

1

No one filed an objection to confirmation.

The Debtor requests the Court enter an order giving the Debtor the following relief:

1.　Enter an order determining on a final basis that the Debtor's Disclosure Statement contains adequate information:

2.　Find that the Debtor's solicitation of ballots was in accordance with the Code and its requirements;

3.　Find that the Debtor's proposed Plan meets the requirements of 11 U.S.C. §1129; and

4.　Confirm the Debtor's proposed Plan of Reorganization including all relief sought therein.


Dated: January 15, 2021　　　　　Respectfully submitted,

THE FOX LAW CORPORATION, INC.


/s/ Steven R. Fox
Steven R. Fox, attorney for Douce France, Debtor-in-Possession

# TABLE OF CONTENTS

I. Plan Confirmation Memorandum

    A.    §1129(a)(1); The Plan Complies with the Applicable Provisions of Title 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    §1129(a)(2); The Proponent of the Plan Complies with the Applicable Provisions of Title 11. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.    1129(a)(3); The Plan has been Proposed in Good Faith and Not by any Means Forbidden by Law. . . . . . . . . . . . . . . . . . . . . . . . . 5

    D.    §1129(a)(4); All Payments Requiring Review by the Court has been or will be Subject to Approval as Reasonable. . . . . . . . . . . . . . . . 6

    E.    §1129(a)(5); The Proponent of the Plan has Disclosed the Identities and Affiliations of Persons Participating in the Plan. . . . . . . . . . . 7

    F.    §1129(a)(6); Approval of Regulated Charges. . . . . . . . . . . . . . . 7

    G.    §1129(a)(7); Each Holder of a Claim or Interest of an Impaired Class has Accepted the Plan or will Receive Property of Value Not Less Than the Amount that such Holder would Receive or Retain if the Debtor's Assets were Liquidated Under Chapter 7 of the Bankruptcy Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    H.    §1129(a)(8); Acceptance by Classes of Impaired Claims. . . . . . . . 7

    I.    §1129(a)(9); The Plan Complies with the Required Treatment of Priority Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    J.    §1129(a)(10); Multiple Classes of Impaired Claims have Accepted the Plan, Determined Without Including Any Acceptance of the Plan by an Insider. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    K.    §1129(a)(11); The Plan Is Feasible . . . . . . . . . . . . . . . . . . . . 8

    L.    §1129(a)(12); Requires the Payment of Filing Fees and Trustee's Fees Pursuant to Section 1930 of the Bankruptcy Code. . . . . . . . 12

    M.    §1129(a)(13); Retirement Benefits must be Maintained. . . . . . . 12

- i -

N. §1129(a)(14) Domestic Support Obligations. . . . . . . . . . . . . . . . . 12

O. §1129(a)(15) Individual Chapter 11 Debtor; Objection to Confirmation

of Plan by the Holder of an Allowed unsecured Claim. . . . . . . . . . . . . 12

P. §1129(b)(1), (2); Cram down.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Q. Section 1129 (d); Avoidance of Taxes. . . . . . . . . . . . . . . . . . . . . . 12

II.   Issues the Court Raised at the Hearing on the Disclosure Statement  . . 12

A.   Plan Section J . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

B.   Plan Section K . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

C.   Plan Section L . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

D.   Plan Section M - the Temporary Injunction . . . . . . . . . . . . . . . 14

E.   Feasibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

F.   The 1111(b) Election . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

III.   Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

**Cases**

Wright v. Vinton, 300 U.S. 440, 57 S.Ct. 556 (1937) . . . . . . . . . . . . . . . . . 17


Airadigm Communications vs. FCC (In re Airadigm Communications),

519 F.3d 640 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Sylmar Plaza, 314 F. 3d 1070 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . 7

In re Lowenschuss, 67 F.3d 1394 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . 15

Feld v. Zale Corp. (In re Zale Corp.), 62 F.3d 746 (5th Cir. 1994)  . . . . . . . . 17

In re L & J Anaheim Assocs., 995 F.2d 940 (9th Cir. 1993)  . . . . . . . . . . . . . 5

In re American Hardwoods, 885 F.2d 621 (9th Cir. 1989) . . . . . . . . . . . . . . 15


In re Brotby, 303 B.R. 177 (9th Cir. BAP 2003). . . . . . . . . . . . . . . . . . . . . 16

In re Rohnert Park Auto Parts, 113 B.R. 610 (9th Cir. BAP 1990) . . . . . . . . 15-16

In re Seatco, Inc., 257 B.R. 469 (Bankr. N.D. Tex. 2001)  . . . . . . . . . . . .  17-18

In re U.S. Truck Co., 47 B.R. 932, 939 (Bankr. E.D. Mich. 1985) . . . . . . . . . . .  5

In re Nite Lite Inns, 17 Bankr. 367, 370 (Bankr. S.D. Cal. 1982) . . . . . . . . . .  10


**United States Code and Bankruptcy Rules**

Title 11

§105  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

§524  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14-15, 17

§1111 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 13, 19

§1122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

§1123 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 5-6, 14, 15

§1125 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4-5

§1129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4-9, 13, 20

§1141 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15,

## PLAN CONFIRMATION MEMORANDUM

Section 1129(a) provides that the Court will confirm a Chapter 11 plan if the enumerated requirements are met. The Debtor believes that it has satisfied §1129's requirements and that the Court should confirm the Plan.

A.    **§1129(a)(1); The Plan Complies with the Applicable Provisions of Title 11**.

The substantive provisions of the Bankruptcy Code, most relevant in the context of §1129(a)(1), are §§1122, 1123, and 1125.

Section 1122(a) provides:

(a)    Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

The one secured claim has been classified in Class 1. This claim, the claim of Heritage Bank of Commerce, is both secured and unsecured. The Bank elected the §1111(b) election following negotiations with the Debtor as to the terms of the election. The parties had extensive discussion concerning the mechanics of the election, case law analyzing the election, the value of the Debtor's assets and they reached an agreement concerning the Bank's rights and payment terms to the Bank.

Claims of general unsecured creditors have been placed in Classes 2B with Class 2A containing the claims of de minimus claims, those claims under $1,000.

De minimus claims will be paid a 10% dividend on the Effective Date. Creditors holding claims larger than $1,000 may reduce their claims to $1,000 and receive a single payment of 10% of their reduced claim. As of the date of the filing of this Motion, no creditors have elected to reduce their claims to have their claims treated as a de minimus claims.

As to Class 2B, the class of general unsecured claims, the Plan provides that they will receive a pro-rata share of a fund totaling $23,755.78, created by

Douce paying $446.45 monthly in months 7 to 60. The payments are pot payments, not a guarantee of a percentage.

The classification is proposed in good faith. The Debtor did not divide the claims into multiple classes solely to create a consenting class to permit confirmation. In re U.S. Truck Co., 47 B.R. 932, 939 (Bankr. E.D. Mich. 1985).

Pursuant to the Plan, administrative claims are treated as unclassified claims and will be either paid in full on the Effective Date or paid over time per an agreement between the Debtor and the holder(s) of such claim(s). As the Plan notes, the Debtor will pay $20,000 to its bankruptcy counsel on the Effective Date (subject to approval of the Court of a motion for approval of fees and expenses), monies that the Debtor's principal is contributing. Thereafter the Debtor will pay counsel as the Debtor can afford to do so.

Further, §1123's requirements are satisfied.

• (a)(1). The Plan classifies claims other than administrative priority claims and priority tax claims. Administrative claims and priority tax claims are not classified while all other claims are classified.

• (a)(2). The Plan identifies unimpaired classes of claims or interests. Classes 1 and 2 are impaired because their contractual rights will be altered. In re L & J Anaheim Assocs., 995 F.2d 940 (9th Cir. 1993)

• (a)(3). The Plan specifies the treatment of any class of claims or interests impaired under the Plan.

• (a)(4). The Plan provides the same treatment for each claim or interest in a particular class, except where a member of a particular class has agreed to less favorable treatment.

• (a)(5). The Plan provides adequate means for its implementation. As necessary, the Plan extends maturity dates, assumes or rejects leases and contracts, and retains in the Debtor property of the estate. Attached to the Memorandum are updated financial reports concerning the Debtor's financial

status. The Plan provides that the Debtor will retain estate property. The Plan does not provide for the transfer of any estate property to any entity other than the Reorganized Debtor. The Debtor is not merging with one or more persons, selling estate property, satisfying or modifying any liens or cancelling or modifying any indenture or similar instrument.

• (a)(6) and (7). These subsections do not apply to the Debtor as its charges are not subject to a governmental regulatory agency and because the Plan does not provide for the selection of any officers, directors, or trustees.

• (a)(8). The Debtor is not an individual. It is a corporation. This sub-section is inapplicable.

Finally, §1125's provisions were satisfied. The Court tentatively approved the Disclosure Statement.

B.    **§1129(a)(2); The Proponent of the Plan Complies with the Applicable Provisions of Title 11**.

The Debtor has complied with all applicable Code provisions. §1129(a)(2) The relevant consideration is whether the Debtor has complied with §1125, which requires full disclosure prior to soliciting acceptances. The Court tentatively approved the Debtor's Disclosure Statement and that was distributed to all creditors prior to soliciting votes. The filed Certificate of Service shows that the solicitation package was served on the creditor body [Dckt. 143, 12/11/2020].

C.    **§1129(a)(3); The Plan has been Proposed in Good Faith and not by any Means Forbidden by Law**.

Section 1129(a)(3) requires that the Proponent comply with all applicable law, not merely bankruptcy law. The Code does not define good faith but a definition has been developed and construed on a case-by-case basis. A plan is proposed with the necessary good faith if a plan achieves a result which is consistent with the Bankruptcy Code's objectives and purposes. (In re Sylmar Plaza), 314 F.3d 1070, 1074-75 (9th Cir. 2002).

One case explained the good faith requirement as follows:

> Essentially, a reorganization plan is proposed in good faith when there is a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code. . . . The primary purpose of the reorganization chapters of both the Act and the Code has been to promote restructuring of debt and the preservation of economic units rather than a dismantling of the estate."

In re Nite Lite Inns, 17 Bankr. 367, 370 (Bankr. S.D. Cal. 1982).

The Debtor has proposed the plan in good faith and not by any means forbidden by law.

The Debtor remains as a single economic unit. The Plan provides adequate means to meet Plan obligations. Creditors receive more under the Plan than they would receive in a liquidation. Here in a liquidation, unsecured creditors would receive no distribution. The Plan provides for the payment of monies to unsecured creditors. Also, the Plan preserves the property of the estate as one economic unit and does not seek to liquidate.

The Debtor proposed its Plan in good faith.

D. **§1129(a)(4); All Payments Requiring Review by the Court has been or will be Subject to Approval as Reasonable**.

All payments in this case requiring disclosure and approval by this Court pursuant to §1129(a)(4) are, and will be, subject to approval by this Court through the filing of fee applications by the professional.

E. **§1129(a)(5); The Proponent of the Plan has Disclosed the Identities and Affiliations of Persons Participating in the Plan**.

Post-confirmation, Mauro Ferreira will act as its disbursing agent and he will acquire the ownership interest in the Debtor.

Mr. Ferreira has overseen Douce's business during the case and during the pandemic. Though Douce has struggled, overall it has had positive cash flow during the case and more recently has been acquiring business through Internet sales, something Mr. Ferreira recently instituted. Unlike many other businesses,

- 6 -

the Debtor has remained in business. His continuance as the person operating the business post-confirmation is in the best interest of all constituencies.

F.    **§1129(a)(6); Approval of Regulated Charges**.

Section 1129(a)(6) is inapplicable to the Debtor.

G.    **§1129(a)(7); Each Holder of a Claim or Interest of an Impaired Class has Accepted the Plan or will Receive Property of Value Not Less Than the Amount that Such Holder would Receive or Retain if the Debtor's Assets were Liquidated Under Chapter 7 of the Code**.

Creditors must accept the Plan or receive or retain under the Plan on account of such claims or interests, property of value, as of the Plan's Effective Date, but not less than the amount that such holder would receive or retain if the Debtor were liquidated under Chapter 7.

Classes 1 and 2 have accepted the Plan

Alternatively, the Disclosure Statement shows all creditors will receive not less than the amount they would receive in a Chapter 7 liquidation.

The Plan is in the best interest of creditors.

H.    **§1129(a)(8); Acceptance by Classes of Impaired Claims**.

Each impaired class must accept the Plan (§1129(a)(8)) or, if one or more impaired classes have not accepted the plan, that the plan meets the §1129(b) requirements, the cramdown provisions. Here both Classes 1 and 2 voted to accept the Plan. The Debtor does not need to cramdown any class.

I.    **§1129(a)(9); The Plan Complies with the Required Treatment of Administrative and Priority Claims**.

The Plan provides holders of allowed claims, entitled to priority under §507, will receive cash equaling the allowed amount of those claims on the Effective Date, or as soon as practicable thereafter. Debtor's bankruptcy counsel has agreed to an alternative treatment for payment of its allowed fees and expenses. Section 1129(a)(9) is satisfied.

With respect to priority tax claims, Douce has two tax claims, the IRS for $2,907.47, that will be paid before 60 months after the date this case was filed and the Franchise Tax Board owed $1,604.73 which also will be paid before 60 months after the date this case was filed. Section 1129(a)(9) is satisfied.

J. **§1129(a)(10); Multiple Classes of Impaired Claims have Accepted the Plan, Determined without including any Acceptance of the Plan by an Insider**.

Section 1129(a)(10) requires affirmative acceptance of the Plan by at least one impaired class, without counting the votes of insiders.

Two impaired classes voted to accept the Plan. No class rejected the Plan.

K. **§1129(a)(11); The Plan is Feasible**.

Section 1129(a)(11) requires the Court to find that:

> [C]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation is proposed in the plan.

11 U.S.C. §1129(a)(11).

In addressing feasibility, the 9th Circuit Bankruptcy Appellate Panel stated:

> To demonstrate that a plan is feasible, a debtor needs only show a reasonable probability of success. Acequia, 787 F.2d at 1364. The Code does not require the debtor to prove that success is inevitable, In re WCI Cable, Inc., 282 B.R. 457, 486 (Bankr.D.Or.2002), and a relatively low threshold of proof will satisfy § 1129(a)(11), In re Sagewood Manor Assocs. Ltd., 223 B.R. 756, 762 (Bankr.D.Nev.1998), so long as adequate evidence supports a finding of feasibility. See In re Pizza of Hawaii, Inc., 761 F.2d at 1382 (reversing where feasibility determination excluded consideration of major claim).

Computer Task Group vs. Brotby (In re Brotby), 303 B.R. 177, 191-192 (9th Cir. BAP 2003). A debtor must show a reasonable probability of success, not a guaranty. In other words, that a debtor may struggle post-confirmation to make plan payments does not mean that a plan is infeasible. The test for feasibility is "a reasonably probability of success"

Feasibility can be difficult to demonstrate in normal economic times.

Presently the Debtor faces Covid 19, statewide shutdowns orders stay at home orders, and a recession.

Notwithstanding, Douce can demonstrate that its plan is feasible.

When the case began, the Debtor's financial situation was not strong but as historical financial report attached **Exhibit "A"** show, the Debtor had solid gross revenue figures, consistent expenses and some positive net income. However, with Covid 19 hitting shortly after the case commenced, Douce lost the majority of its customers. The Debtor's revenues shrunk and, then Douce moved from its long time leasehold to two new locations in June and July, 2020. The move meant the Debtor had to turn down orders during the time it could not manufacture products.

To help it survive, Douce France, in fall, 2020, began marketing online for customers.

The Debtor started March, 2020 with 37 companies that purchased products daily or weekly. In June, 2020, the Debtor, after losing most of its customers was back up to 21 clients but many of them ordered intermittently. Douce began Internet marketing in September. It acquired five more retail and wholesale intermittent costumers that month. By December, it had increased its online sales so that the sales accounted for 5% of December's sales revenue or about $4500.00. The Debtor had not seriously considered Internet sales before Covid 19 because it manufactures bakery goods at the wholesale level. However, it is difficult to approach new customers.

The Debtor's P&L statements show that Douce's gross revenues shrunk in 2020 but the Debtor (1) remained in business, (2), obtained new customers, (3) moved, (4) survived its principal's week long hospitalization and (5) has reduced expenses all to remain in business.

On an accrual basis (**Exhibit "B"**) , the Debtor's net income (post-petition) is $31,941.02 as of December 31, 2020, this despite negative net income of

-19,380.15 in March, 2020 (the month Covid 19 first really hit the Bay Area) and the months of negative net income that followed the Debtor's move in July, 2020.  The cash based P&L (**Exhibit "C"**) also shows a large loss in March, 2020, of -$17,785.16, losses in the months after the move, and a positive net income of $16,867.02 in December, 2020.  The Debtor is moving past Covid 19. The Debtor is moving past the cost of moving to two new locations.

The accrual based P&L shows the Debtor's struggles and movement the best.  Its expenses have moved downward, sharply, since the case began.  But for Covid 19, the Debtor would have had much more net income.

The Debtor's payables report (**Exhibit "D"**) reflects all payables current except for those of Sigona's Farmers Market.  The Debtor owes monies to this entity which in turn overs close to the same amount of money to the Debtor. Otherwise payables are within 30 days as of December 31st.  Current payables reflects a well run business.

Douce's receivables report at December 31, 2020 (**Exhibit "E"**) reflects approximately $49,000 in receivables under 60 days.  The Debtor's initial Schedule B reported a similar amount of receivables as of the filing date.  The month end receivables figures post-petition have varied but $50,000 appears to be a normal figure for the Debtor.  That its receivables are at a place that they normally should be at, approximately $50,000 under 90 days, is a good sign.

The financial reports reflect a company going through a triple whammy: Covid 19; the recession; and the move.  Given the circumstances, the Debtor's financial performance has been  good.  It remained in business and kept its employees when competitors shut their doors and obtained new customers.

Looking forward, there are at least these reasons why the Plan is feasible.

- With vaccinations underway, with a new relief package recently passed into law and the likelihood of yet a stimulus package becoming law in a few months, the economy will move beyond Covid

19 and the recession. The impact to the Debtor will be positive because it manufactures a product people want.

- Further, Mr. Ferreira's willingness to infuse a second $20,000 into the Debtor (the new value monies) once a plan is confirmed is an additional sign of feasibility. Mr. Ferreira infused $20,000 in August, 2020 (shown on the balance sheet as a capital infusion) and is prepared to infuse a second $20,000 into Douce France.
- The Debtor's new Internet sales.
- The Debtor is making these changes to its business operation:
  - Douce has two leased locations. The Redwood City location is used mostly to prepare a small variety of bakery products. Its monthly cost for rent and utilities is about $7,300. Payroll and workers compensation insurance for this location amounts to $9,360.00 monthly. The Debtor will shut down this location to realize monthly savings of $16,660.00. The actual savings will be less because Douce will bring at least two workers over to the other leased location. Closing the Redwood City location will mean that Douce will no longer produce certain products anymore. However, the Redwood City location generates approximately $120,000 annually in gross revenues against expenses that are considerably higher. Shutting down the Redwood City location will reduce Douce's expenses.

The evidence shows that the Plan, if confirmed, is not likely to be followed by a Chapter 7 liquidation or a need for further reorganization.

L. **§1129(a)(12); Requires the Payment of Filing Fees and Trustee's Fees Pursuant to 28 U.S.C. §1930**.

The Debtor is current with its payments to the United States Trustee and will have paid any then outstanding fees as of the Effective Date.

M. **§1129(a)(13); Retirement Benefits must Be Maintained**.

Section 129(a)(13) is inapplicable to the Debtor.

N. **§1129(a)(14) Domestic Support Obligations**.

Section 1129(a)(14) is not applicable to this Debtor.

O. **§1129(a)(15) Individual Chapter 11 Debtor; Objection to Confirmation of Plan by the Holder of an Allowed Unsecured Claim**.

Section 1129(a)(15) is not applicable to the Debtor.

P. **§1129(b)(1), (2); Cramdown**.

Douce's Plan has two classes: Class One consists of the claim of Heritage Bank of Commerce which made the §1111(b) election and whose secured and unsecured claims are both being treated in Class One; and Class Two consists of the claims of general unsecured creditors both de minimus and otherwise.

All classes voted to accept the Plan. The Debtor does not need to seek confirmation by cramdown.

Q. **Section 1129(d): Avoidance of Taxes**.

The Debtor's tax obligations are minor and are paid in the 60 months following the petition date. No governmental entity has objected.

**II.**

**Issues the Court Raised at the Hearing on the Disclosure Statement.**

At the disclosure statement hearing, the Court commented that certain issues would be discussed at confirmation. The Debtor's comments are below.

A. **Plan Section J**

Section J states that the rights the Plan provides to creditors shall be the rights they will hold. Except as the Plan specifically notes, creditors shall have no rights. Heritage Bank negotiated with the Debtor to continue to have certain rights post-confirmation. Other creditors did not.

This statement of rights that creditors possess under the Plan is neither remarkable nor unusual. Section 1141 contains some of these provisions.

- 12 -

Section 1123(b) permits the inclusion of Section J as well.  The provision is reasonable and appropriate.

Creditors have notice of Section J.  No creditor has objected to the inclusion of Section J in the Plan.

B.   **Plan Section K**

Section K requests that the Court value liens asserted against estate property, in particular, the lien held by Susquehanna Salt Lake, owed $23,543 and the lien held by Channel Partners Capital, LLC, owed $83,000.   Heritage Bank's senior secured claim exceeds $400,000.

The Debtor's assets at liquidation are worth $60,858 and in reorganization, $120,000.  (The attached declaration of Mauro Ferreira discusses the value of the Debtor's personal property assets.)  Only Heritage Bank's claim is secured as the value of its collateral is $120,000 and its claim exceeds $400,000. Susquehanna and Channel Partners are unsecured.

Both Susquehanna and Channel Partners were served with the combined Disclosure Statement and Plan. They were afforded notice of the intention to remove their liens (as stated in Section L).

They did not object to the proposed treatment of their claims.  They have acquiesced in the proposed treatment.

C.   **Plan Section L**

Section L also addresses creditors' rights.  Section J limits those rights that creditors will possess to those rights provided to them in the Plan. Heritage Bank negotiated a different treatment of its rights.  The results of those negotiations are found in Section L.

The rights the Bank retains are that its "Debt Instruments" shall continue in full force and effect.

Creditors were provided with Section L when served with the Plan.  No one objected to the treatment which is permissible.  §1123(a)(3) and (5), (b)(5).

D. **Plan Section M - the Temporary Injunction**

Section M concerns the proposed temporary injunction.

This provision concerns the proposed temporary injunction restraining any creditor, party-in-interest or any third party from pursuing any officer, director, shareholder, employee, managing person or responsible person of the Debtor (the "enjoinees") on account of any pre-bankruptcy claim where both the Debtor had liability and an enjoinee, here Mauro Ferreira, also has liability of any nature.

1.      The Court Has the Authority to Issue a Temporary Injunction.

Bankruptcy courts have the authority under §§1123(b), 1141, 524 and 105 to issue the temporary injunction sought here.  The injunction does not discharge the third party; the temporary injunction delays enforcement of rights against the third party.  Section 524(e) bars the discharge of a non-debtor.  The temporary injunction only delays enforcement, something §524(e) does not forbid.

In re American Hardwoods, 885 F.2d 621 (9th Cir. 1989) and In re Lowenschuss, 67 F.3d 1394 (9th Cir. 1995), do not prohibit this Court from issuing a temporary injunction.  They are distinguishable as the plan proponents sought either permanent injunctions or releases.

In re Rohnert Park Auto Parts, Inc., 113 B.R. 610 (9th Cir. BAP 1990) is also distinguishable.  There, an objecting creditor, holding a claim scheduled as disputed, did not file a proof of claim in the bankruptcy case and would not share in the substantial distributions the debtor would be making.

Rohnert Park is distinguishable.

•       First, here we have consent.  The creditor body voted to accept the Plan and the temporary injunction.

•       Secondly, the objecting creditor in Rohnert Park had filed an untimely claim and it would not share in the plan distribution.  These facts do not exist here. (The Rohnert Park panel stated: "...it would be inequitable to hold that a creditor whose claim is held time

- 14 -

barred, and who is unable to benefit from the Plan, to be bound by a provision of the Plan enjoining pursuit of a claim against guarantors of the debtor." Rohnert Park at 616. The ruling was based heavily on the equities of the particular situation.)

- Here, the Debtor's principal will infuse new monies and is the driving force behind Douce's ability to pay the Plan payments.

- Fourthly, Rohnert Park conflated a temporary injunction with a permanent injunction. Unlike the objecting creditor in Rohnert Park, creditors here will receive a distribution in part because the principal is infusing new monies. Attached as **TAB "F"** (following the exhibits) is a copy of an unpublished memorandum from the Bankruptcy Court for the Central District of California in which a bankruptcy court discusses, among other things, how Rohnert Park conflated a temporary injunction with a permanent injunction.

- In re Brotby (Computer Task Group vs. Brotby), 303 B.R. 177 (9th Cir. BAP 2003) affirmed a lower court holding a plan could enjoin a creditor from pursuing a debtor post-confirmation for a non-dischargeable debt until plan payments were completed. (Id. at 186-187) The analysis here is the same - an injunction issued to assist in the success of a plan of reorganization. Brotby directly questions the reasoning of the panel in Rohnert Park.

- The injunction is a temporal means to assist the Plan. Prior, and superseding authority from the U.S. Supreme Court holds that creditors can be stayed for a period of time. Wright v. Vinton Branch of the Mountain Trust Bank, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937)(reversing prior holding that a five year stay of a lien holder's right to foreclose on real property was an unconstitutional taking and ruling that a 3 year delay was not).

- 15 -

Section 524(e)'s language is permissive, not mandatory.   Section 524(e) states "does", not "shall" or "will".  In contrast, §1129 uses mandatory language. Section 524(e) does not expressly limit the ability of the Court to delay enforcement of a claim against a third party; it says the liability of a third party cannot be discharged by a debtor's discharge.  See Airadigm Communications vs. FCC (In re Airadigm Communications), 519 F.3rd 640 (7th Cir. 2008).

2.     The Test to Issue a Temporary Injunction Post-Confirmation.

The Debtor is unaware of binding authority in this Circuit enunciating a standard under which a temporary injunction may be issued.  In Feld v. Zale Corp (In re Zale Corp.), 62 F.3d 746 (5th Cir. 1995), the Fifth Circuit enunciated a two part test to determine if issuing a temporary injunction post-confirmation was permissible in order to assist the reorganization but in a manner not to effectively constitute a permanent injunction.  The circumstances the test requires looks to either (1) an identity of interest between the debtor and the third party that is so close that the collection action effectively is a suit against the debtor and (2) when the collection action will adversely impact the debtor's ability to perform under its plan and reorganize.  The Zale Corp. court noted that an injunction may be issued if either of these two circumstances are present. Zale at 761.

Facts relevant to each of these circumstances are discussed in the attached declaration of Mauro Ferreira.

If the test is met, then the bankruptcy court considers the traditional four part test for issuance of an injunction.  In re Seatco Inc., 257 B.R. 469, 476 (Bankr. N.D. Texas 2001).  That court stated the four part test as follows:

The four prerequisites to the issuance of such an injunction are: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the movant

outweighs the threatened harm an injunction may cause to the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest.

Id. at 477.

Mr. Ferreira's Declaration discusses facts which speak to the four part test and to the two part test. For brevities' sake the facts are not repeated here.

3.     Final Thoughts and Conclusion Regarding the Temporary Injunction.

The temporary injunction enhances Douce's Debtor's ability to make plan payments by allowing its principal to continue to rebuild the company. Douce is heavily dependent on the principal's efforts and work. He runs the company, he does deliveries, he negotiates contracts, he steps in when employees are unable to work. Without him, Douce France would not exist. The injunction is an essential means to implement the Plan (§123(a)(5)), the injunction confers material benefits on the estate, the injunction is in the best interest of the vast majority of the creditors, the estate and the equity interest holders, and issuing the injunction will be important to promoting plan feasibility.

Creditors may argue that a principal should file his/her own petition. While the statement may have a superficial appeal, it ignores the needs of the creditor body who, having gone through one bankruptcy, must now go through a second case that will impact their ability to be paid. The statement - just file your own bankruptcy petition - ignores the needs of the creditor body.

When plan payments are completed, the temporary injunction terminates.

E.     **Feasibility**

Feasibility is discussed above at Section I-K.

There is an additional matter to consider - the two balloon payments to Heritage Bank. The estimated balloon payment on the secured claim, due in 10 years is estimated to be $103,607.35. The balloon payment on the unsecured claim due in 13 years is estimated to be $108,939.43.

- 17 -

Their payments are feasible.  First, Douce has 10 and 13 years to prepare. The balloon payments were separated to make payment easier.  Second, Douce's pre-Covid 19 gross revenues exceeded $1,000,000 annually so as the economy improves (and after payments to unsecured creditors are completed) it can set aside monies for the balloon payments.  Also in 10 and 13 years from now, the Debtor most likely will be able to borrow monies to pay the balloon payments.

F.    **The 1111(b) Election**

Chapter 11 is a means for debtors and creditors to negotiate and to resolve disputes. Here, in this case, the Debtor and the Bank spoke early and often. Prior to the Debtor filing its initial plan, the Bank advised the Debtor of the Bank's intention to take the §1111(b) election.  The right to take the election rests with the Bank.  The Debtor and the Bank considered case law and at least one scholarly work analyzing the election.  The parties negotiated the terms of the §1111(b) election grounded with an understanding of the election.

The negotiated terms are appropriate. The Plan treats the Bank's claim as secured to $120,000 and the attached declaration supports this value.  That claim is paid in full over time with interest.  The balance of the Bank's claim is unsecured and is paid in full over time without interest.  This treatment is appropriate under the Code.

## III.

## Conclusion.

For the reasons set forth in the attached Memorandum, the attached declaration and exhibits, the Debtor requests the Court enter an order affording to the Debtor the following relief:

1.    Enter an order determining on a final basis that the Debtor's Disclosure Statement contains adequate information:

2.    Find that the Debtor's solicitation of ballots was in accordance with the Code and its requirements;

3.      Find that the Debtor's proposed Plan meets the requirements of 11 U.S.C. §1129; and

4.      Confirm the Debtor's proposed Plan of Reorganization including all relief sought therein.

Dated: January 15, 2021                  Respectfully submitted,


                                         THE FOX LAW CORPORATION, INC.


                                         /s/ Steven R. Fox
                                         Steven R. Fox, attorney for Douce France,
                                         Debtor-in-Possession

**DECLARATION OF MAURO FERREIRA IN SUPPORT**

**OF CONFIRMATION OF DEBTOR'S PLAN**

I, Mauro Ferreira, declare as follows:

1.  My business address is 3553 Haven Ave., Suite 1, Menlo Park, CA 94025. My statements here are based on my personal knowledge. If called to testify concerning this Declaration, I could and would do so competently.

**I.**

**PERSONAL KNOWLEDGE AND AUTHENTICATION.**

2.  I have owned the Debtor since the mid 1990s and I have operated the business since then. I oversee operations, ordering raw materials and products, shipping, selling products, administration and anything else that needs to be done.

3.  Along with the company's bookkeeper, I am one of the custodians of the Debtor's books, records and documents. The Debtor maintains records of its transactions in the regular course of business, and it is the Debtor's practice and procedure to maintain records and to record transactions, acts, and events at or about the time the transaction occurs. The Debtor relies on these records in connection with its business dealings. I oversee the safekeeping of business records including financial records.

4.  The Debtor has business records primarily as computer files. We are on the cloud. If a business record is maintained on a computer, there are safety features which help to keep business records secure. For example, access to many records is limited. Financial records as one example can only be accessed if one has the necessary password. Only management level personnel have a necessary password. Other employees do not. The computer is linked to a server. The server backs up the data stored on the computer. The server computer and attachments are maintained in a secured location.

5. I have personal knowledge of the procedures for creating, receiving, maintaining, storing and retrieving documents and records. Douce's business records are received, maintained, stored and retrieved in the ordinary course of its business. It is in the ordinary course of the business to receive, maintain, store and retrieve records including any business records attached as exhibits discussed below. People with knowledge of the records and any exhibits contained below recorded or made these exhibits discussed below. The records were recorded at or near the time of their receipt or creation in the ordinary course of business. The exhibits discussed below are true and correct copies of what they appear to be.

6. Attached are true and correct copies of financial reports that report on the Debtor's financial health. They were prepared at my direction and I have had an opportunity to inspect them to satisfy myself that the reports are reliable.

## II.

## The Plan Confirmation Memorandum

## §1129(a)(1)

7. The creditors have been divided into two classes. Class 1 consists of the secured and unsecured claim of Heritage Bank of Commerce which has made the Section 1111(b) election. I do not claim to understand what the election means. The Bank made this election after negotiations with the Debtor as to the terms of the election. There were discussion concerning the value of the Debtor's assets and we reached an agreement concerning the Bank's rights and payment terms to the Bank. Covid 19 has had a significant impact on value of personal property.

8. It is my opinion that at present the Debtor's personal property, including its monies and receivables, are worth about $120,000. I base this opinion on many years of purchasing and selling machinery and equipment used in

the industry, my efforts in the past months to figure out the market for the machinery and equipment including contacting potential purchasers to see if they are interested in purchasing machinery and equipment and at what prices, industry guides and online sale sites, and my awareness that Chinese companies are flooding the market with newer and similar machinery and equipment.

9. I do not believe that the value of the machinery and equipment will rise in the next few years given that Chinese companies are flooding the American market with newer machinery and equipment sold at prices that are inexpensive enough that the need to purchase used machinery and equipment will be depressed.

10. All unsecured claims have been placed in Class 2 and its two sub-classes.

11. As to § 1129(a)(3) and its requirement that a plan proponent comply with all laws, I understand this to be a requirement that the plan be proposed in good faith.

12. Under the Plan, Douce will be one economic unit. The Plan provides adequate means to meet Plan obligations, especially with the new cuts in expenses discussed below. Creditors will receive more under the Plan than they would receive in a liquidation. In a liquidation, unsecured creditors would receive no money. Douce will continue to own its property.

**§1129(a)(5)**

13. Under the Plan, I will act as its disbursing agent to pay creditors and I will hold the stock in the Debtor. I have overseen Douce's business during the case including during the Covid 19 pandemic. Though Douce has struggled, overall it has had positive cash flow during the case and more recently has been acquiring business through Internet sales, something I recently started. Unlike many other businesses, the Debtor has remained in business. I believe that me continuing to be the person operating the

business post-confirmation is in the best interest of the creditors and everyone else involved in this case.

**§1129(a)(11); The Plan is Feasible**.

14. I understand that to confirm a plan, the Court must find that the plan is feasible, that a debtor must show a reasonable probability of success. I believe that Douce can show that its Plan is feasible.

15. When the case began, the Debtor's financial situation was not strong but as the historical financial report attached **Exhibit "A"** shows, Douce enjoyed solid gross revenue figures, consistent expenses and some positive net income. However, with Covid 19 hitting shortly after the case commenced, Douce lost the majority of its customers. The Debtor's revenues shrunk and in the midst of the pandemic, Douce moved from its long time leasehold to two new locations in June and July, 2020. The move cost both orders for products and money as it took time before Douce could operate its business at the two new locations.

16. With Covid 19, and the loss of so many customers, the Debtor moved toward Internet sales as its customer base and purchase patterns changed overnight in March, 2020.

17. The Debtor started March, 2020 with perhaps 37 companies purchasing products daily or weekly. In June, 2020, the Debtor, after losing most of its clients, was up to 21 clients but many of them purchased intermittently. Douce began Internet marketing in September. It acquired five more retail and wholesale intermittent costumers in September. By December, Douce had increased its sales on the Internet that online sales accounted for 5% of December's sales revenue or about $4500.00. We had not seriously considered Internet sales before Covid 19 because the Debtor manufactures bakery goods at the wholesale level. However, with

///

difficulties approaching new customers due to Covid 19, the Internet became a sales venue for the Debtor to use.

18. The attached P&L statements show that Douce's gross revenues shrunk in 2020 but the Debtor (1) remained in business, (2), obtained new customers, (3) moved, (4) survived my week long hospitalization in fall, 2020, and (5) has reduced expenses all to remain in business.

19. On an accrual basis (**Exhibit "B"**) , the Debtor's net income (post-petition) is $31,941.02 as of December 31, 2020, this despite negative net income of -$19,380.15 in March, 2020 (the month Covid 19 first really hit the Bay Area) and the months of negative net income that followed the Debtor's move in July, 2020. The accrual based P&L shows that the Debtor's expenses have moved downward, sharply, since the case began. But for Covid 19, the Debtor would have had much more net income.

20. The cash based P&L (**Exhibit "C"**) also shows a large loss in March, 2020, of -$17,785.16, losses in the months after the move, and a positive net income of $16,867.02 in December, 2020. Douce is moving past Covid 19. The Debtor is moving past the cost to move to the two new locations.

21. The Debtor's payables report (**Exhibit "D"**) reflects all payables current except for those of Sigona's Farmers Market. The Debtor owes monies to this entity which in turn owes close to the same amount of money to the Debtor. Otherwise payables are within 30 days as of December 31st. That Douce's payables are low reflects a well run business.

22. Douce's receivables report at December 31, 2020 (**Exhibit "E"**) reflects approximately $49,000 in receivables under 60 days. The Debtor's initial Schedule B reported a similar amount of receivables as of the filing date. The month end receivables figures post-petition have varied but $50,000 appears to be a normal figure for the Debtor. Other than the months

///

around the Covid 19 pandemic earlier in 2020, the receivables have been where they should be.

23. Here are additional reasons why the Plan is feasible.

- With vaccinations underway, with a new relief package recently passed into law and the likelihood of yet a stimulus package becoming law in a few months, the economy will move beyond Covid 19 and the recession. The impact to the Debtor will be positive because it manufactures a product people want.

- Further, I am infusing a second $20,000 into the Debtor once a plan is confirmed is an additional sign of feasibility. I previously infused $20,000 in August, 2020 (shown on the balance sheet as a capital infusion) and I am prepared to infuse the second $20,000 into Douce France on confirmation. The funds are being held by Debtor's bankruptcy counsel. I had my bank wire the money to counsel's bank account.

- The Debtor's new Internet sales.

- Douce is making these changes to its business to reduce expenses:

    - Douce has two leased locations. The Redwood City location is used mostly to prepare a small variety of bakery products. Its monthly cost for rent and utilities is about $7,300. Payroll and workers compensation insurance for this location amounts to $9,360.00 monthly. The Debtor will shut down this location to realize monthly savings of $16,660.00. The actual savings will be less because Douce will bring at least two workers over to the other leased location. Closing the Redwood City location will mean that Douce will no longer produce certain products anymore. However, the Redwood City location generates approximately $120,000 annually in gross revenues against expenses that are considerably higher. Shutting down the Redwood City location will reduce Douce's expenses.

///

24. I understand that Douce will need to pay two balloon payments to Heritage Bank of Commerce. The estimated balloon payment on the secured claim, due in year 10, is estimated to be $103,607.35. The balloon payment on the unsecured claim due in year 13, is estimated to be $108,939.43.

25. I believe that Douce can make these balloon payments. First, the Debtor has 10 and 13 years to prepare for the payments. The two balloon payments were separated to make each payment easier. Second, the Debtor's pre-Covid 19 gross revenues exceeded $1,000,000 each year so as the economy moves forward, (and after payments to unsecured creditors are completed) the Debtor can set aside monies for the balloon payments. In ten and thirteen years from now, the Debtor most likely will be able to borrow monies to pay both balloon payments. Also, the Debtor is reducing its expenses by moving from two locations to one location.

26. I respect the Court's concerns whether Douce can reorganize. I will point out that Douce has had financial difficulties for a number of years and it has managed to remain in business. The chapter 11 filing meant that hard money lenders would not pull thousands of dollars out of the Debtor's bank account on a regular basis. But for Covid 19, a plan could have been confirmed some months ago but Covid 19 did throw a wrench into confirmation. The company reduced expenses and is now shutting down its second location. I believe that it can make the plan payments.

### III.

### Valuing Liens Asserted Against Estate Property

27. I understand that two creditors - Susquehanna Salt Lake, owed $23,543 and Channel Partners Capital, LLC, owed $83,000 - filed liens against the Debtor's personal property. I understand that Heritage Bank's lien was filed first in time and that Heritage Bank asserts it is owed about $388,000.

28. Above I give my opinion that the personal property (including monies and receivables) are worth $120,0900 and I explain the basis for my opinion.

## IV.

## The Temporary Injunction

29. I understand that the Plan contains an injunction that is intended to keep creditors of the Debtor from suing me or taking any action against my assets or me during the time that Douce is making plan payments. I also understand that the injunction ends once the payments are completed and that creditors may ask this Court to end the injunction during the plan's payment term. I also understand that no creditor has objected to this treatment.

30. Creditor Challenge Diary holds a judgment against me for perhaps $20,000. In June, 2020, it levied on my personal assets. Challenge Diary did not cast a ballot on the Plan. Heritage Bank of Commerce sued my wife and me, among others, in January, 2020, seeking, among other things, approximately $388,000 in monies. Heritage Bank voted to accept the Plan. Unique Funding Solutions, LLC. holds a judgment against me for approximately $42,000, monies the Debtor borrowed. Susquehanna Salt Lake, LLC, which loaned monies to the Debtor, holds a judgment against both the Debtor and me for perhaps $24,000. Neither Unique and Susquehanna voted on the Plan; nor did they object.

31. I have guaranteed other pre-petition debt of the Debtor and I expect more lawsuits. I employed an attorney to advise and to defend me in these actions.

### A.    The Two Part Test.

32. I understand there is a two part test to see if the Court should issue the temporary injunction. The Court is supposed to find either (1) an identity of interest between the Debtor and me that is so close that a lawsuit

against me really is a suit against the debtor or (2) lawsuits will adversely impact the Debtor's ability to perform under its plan and reorganize.

33. As to the first part, an identify of interest, I have operated Douce since the mid-1990s. I take salary when there is money. I do not take salary when money is short. I hire and fire the employees. I oversee them. I handle any job in the company if we are short handed. I am more than a full time employee. I run the company. Without me there is no company.

34. When I was hospitalized in Fall, 2020 for about a week, I ran the Debtor's business from a hospital bed. The customers know me. To them I am the company. I am aware that customers have given breaks to Douce - helping Douce during the chapter 11 case - because I have good relations with them, I have helped them when they have had business difficulties. They repay my kindness by helping Douce out. They do this because to them, I am the company. Personally, I do not have retirement monies as Douce is my retirement. My hope is that sometime in the distant future, I can sell the Debtor's business and retire.

35. My wife and I do not own our own home. We do not own substantial assets that we could sell. We do not own other businesses. The stock in the Debtor is our major asset. Our only retirement consists of perhaps being able to sell the Debtor's business and my wife's pension from her work for the federal government.

36. The Debtor's creditors are pursuing me for monies on guaranties and we are paying legal fees. Judgments have been taken against me too.

37. I am infusing $20,000 into the Debtor, money I could really use to defend myself. After considering the salary I will be paid and my wife's salary against our expenses to live, we basically have no money left over for the legal fights. Our finances have been depleted by (1) the Debtor's business difficulties and (2) the legal fights.

38. If I am busy fighting lawsuits, I will not be able to focus, as I wish, on the Debtor and making plan payments. While I may not have to spend a lot of hours on a regular basis working with my attorneys, the stress of a lawsuit will really limit my effectiveness running the company. That will hurt the Debtor's ability to meet its financial goals and to pay creditors under the Plan. I may be forced to pull more money from Douce post-confirmation to pay my attorneys.

**B.     The Four Part Test.**

39. I understand that there also is a four part test. I will discuss three parts of the four part test: the likelihood the Court will confirm the Plan; a substantial threat Douce will suffer irreparable injury if the injunction is not issued; and that the harm to the Debtor and the creditors far outweighs the harm to some entities if they are forced to wait to sue me.

Likelihood the Court Will Confirm the Debtor's Plan.

40. In my opinion, the Plan's payment obligations are doable. The state is about to come out of the pandemic. We are further cutting expenses. These two items plus my discussion above makes it clear that the Debtor's plan is feasible, a concern the Court has raised.

The Substantial Threat the Debtor Will Suffer Irreparable Injury if the Injunction Does Not Issue.

41. As I note above, I am the company leader, its face and the person the customers know as the company. If I am being sued by Douce's creditors who hold guaranties or if those creditors who have taken judgments against me go after my assets, my major asset are my income from Douce France and my stock in the company.

42. Taking my income and stock would mean the end of the Debtor.

The Harm to the Debtor and the Creditors Far Outweighs the Harm to Any Entity Forced to Wait to Sue Me.

43. The amounts of money at stake for the creditors are relatively small. For me, on the other hand, the amounts of money at stake are huge. I do not have investors to turn to for money as do the creditors who have sued or can sue me.

44. The harm to the Debtor is easy to see. First, I would probably need to draw more money from Douce to defend myself. Even if I did not do so, the impact on Douce from me being focused on being sued instead of working on the reorganization can cause the Plan to fail. Second, all creditors deserve to be paid what the Debtor can afford to pay them. If one or more creditors does an end run around this Court's order confirming the Plan and goes after me, that is, in reality, an attack on the Debtor and the other creditors.

45. In contrast, for these creditors, they will hold their lawsuit claims until they can sue. I imagine that they will get interest too.

## V.

## Conclusion

46. On behalf of the Debtor, I request that the Court approve the Debtor's Disclosure Statement on a final basis and approve the Debtor's Plan and all of its provisions.

I declare under the penalty of perjury and under the laws of the U.S. of America that the foregoing is true and correct.

Executed on January 14, 2021, at _MENLO PARK_, California.

_____
Mauro Ferreira

Exhibit "A"

**EXHIBIT F**

## Douce France Bakery
## Profit & Loss Cash Basis
## January through December 2019

| | Jan 19 | Feb 19 | Mar 19 | Apr 19 | May 19 |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| **Income** | | | | | |
| **Discounts** | 0.00 | 2.60 | 0.00 | 0.00 | 0.00 |
| **Fees** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Sales** | | | | | |
| **Scrap** | -46.20 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Wholesale** | 113,019.25 | 99,783.46 | 85,454.72 | 93,063.51 | 121,585.56 |
| **Total Sales** | 112,973.05 | 99,783.46 | 85,454.72 | 93,063.51 | 121,585.56 |
| **Sales Discounts** | -3,614.23 | -7,845.27 | -2,731.79 | -2,381.82 | -3,110.76 |
| **Total Income** | 109,358.82 | 91,940.79 | 82,722.93 | 90,681.69 | 118,474.80 |
| **Cost of Goods Sold** | | | | | |
| **Cost of Goods Sold** | | | | | |
| **COGS-Dir Labor** | 30,446.44 | 15,831.37 | 28,152.49 | 24,830.12 | 26,154.98 |
| **COGS-Food** | 18,970.56 | 24,799.02 | 9,724.81 | 23,225.20 | 23,859.57 |
| **COGS-Paper** | 4,917.93 | 6,049.53 | 2,491.14 | 4,376.17 | 6,609.51 |
| **Total Cost of Goods Sold** | 54,334.93 | 46,679.92 | 40,368.44 | 52,431.49 | 56,624.06 |
| **Total COGS** | 54,334.93 | 46,679.92 | 40,368.44 | 52,431.49 | 56,624.06 |
| **Gross Profit** | 55,023.89 | 45,260.87 | 42,354.49 | 38,250.20 | 61,850.74 |
| **Expense** | | | | | |
| **Accounting & Bookkeeping** | 843.00 | 1,061.65 | 891.10 | 4,033.75 | 3,142.25 |
| **Advertising and Promotion** | 0.00 | 130.00 | 8.04 | 0.00 | 0.00 |
| **Automobile Expense** | | | | | |
| **Citation** | 118.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Fuel** | 1,194.20 | 867.18 | 1,078.53 | 1,121.10 | 1,700.57 |

**Douce France Bakery**
**Profit & Loss Cash Basis**
**January through December 2019**

| | Jan 19 | Feb 19 | Mar 19 | Apr 19 | May 19 |
|---|---|---|---|---|---|
| **Insurance** | 0.00 | 2,923.21 | 0.00 | 1,052.62 | 480.08 |
| **R&M** | 456.55 | 160.38 | 727.53 | 79.16 | 0.00 |
| **Registration** | 602.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Rental** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Tolls, Parking, Etc.** | 332.45 | 385.20 | 230.30 | 220.00 | 278.25 |
| **Total Automobile Expense** | 2,703.20 | 4,335.97 | 2,036.36 | 2,472.88 | 2,458.90 |
| **Bank Service Charges** | 1,657.00 | 2,313.26 | 564.00 | 1,139.34 | 1,340.00 |
| **Business Licenses and Permits** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Computer and Internet Expenses** | 12.95 | 12.95 | 207.90 | 12.95 | 0.00 |
| **Contract Labor** | 0.00 | 0.00 | 0.00 | 929.84 | 1,047.69 |
| **Day Labor** | 810.00 | 810.00 | 1,320.00 | 1,070.00 | 4,300.01 |
| **Donation** | 0.00 | 250.00 | 0.00 | 0.00 | 328.30 |
| **Dues, Subscriptions, Membership** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Equipment** | | | | | |
| **Maintenance** | 0.00 | 0.00 | 1,577.25 | 0.00 | 0.00 |
| **Rental** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Equipment** | 0.00 | 0.00 | 1,577.25 | 0.00 | 0.00 |
| **Insurance Expense** | | | | | |
| **Commercial  Umbrella Policy** | 0.00 | 507.95 | 0.00 | 211.04 | 268.66 |
| **Liability Insurance** | 0.00 | 1,703.21 | 0.00 | 682.94 | 221.06 |
| **Life Insurance** | 119.09 | 119.09 | 119.09 | 119.09 | 119.09 |
| **Worker's Compensation** | 576.63 | 63.37 | 569.02 | 1,069.48 | 547.94 |
| **Insurance Expense - Other** | 0.00 | 20.00 | 0.00 | 0.00 | 0.00 |
| **Total Insurance Expense** | 695.72 | 2,413.62 | 688.11 | 2,082.55 | 1,156.75 |

**Douce France Bakery**
**Profit & Loss Cash Basis**

**January through December 2019**

| | Jan 19 | Feb 19 | Mar 19 | Apr 19 | May 19 |
|---|---|---|---|---|---|
| **Interest Expense** | | | | | |
| **Finance Charge** | 1,107.66 | 1,194.01 | 1,039.17 | 1,000.01 | 976.08 |
| **Loan Interest** | | | | | |
| **Channel Partners Loan Inter** | 11,678.31 | 10,566.09 | 11,122.20 | 1,000.00 | 3,000.00 |
| **Forward Financing** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Heritage SBA Loan Interest** | 2,946.58 | 2,390.26 | 2,948.83 | 0.00 | 0.00 |
| **SSI LLC Loan_Interest Expe** | 4,760.00 | 3,920.00 | 5,600.00 | 0.00 | 4,480.00 |
| **UFS.** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Loan Interest** | 19,384.89 | 16,876.35 | 19,671.03 | 1,000.00 | 7,480.00 |
| **Total Interest Expense** | 20,492.55 | 18,070.36 | 20,710.20 | 2,000.01 | 8,456.08 |
| **Legal Fees** | 0.00 | 0.00 | 0.00 | 0.00 | 5,000.00 |
| **Merchant Account Fees** | 763.84 | 819.21 | 650.27 | 316.62 | 298.54 |
| **Office Admin & Supplies** | 362.85 | 256.30 | 328.61 | 119.92 | 508.29 |
| **Payroll Expenses** | | | | | |
| **Fees** | 228.82 | 141.16 | 139.12 | 139.12 | 253.68 |
| **Salaries & Wages** | 4,965.97 | 4,925.62 | 4,013.77 | 6,965.21 | 6,692.85 |
| **Taxes** | 578.55 | 598.46 | 291.66 | 532.23 | 284.74 |
| **Total Payroll Expenses** | 5,773.34 | 5,665.24 | 4,444.55 | 7,636.56 | 7,231.27 |
| **Pest Control** | 188.00 | 94.00 | 0.00 | 0.00 | 0.00 |
| **Rent** | | | | | |
| **Rent - Hayward, 1 & 2** | 5,392.91 | 5,392.91 | 0.00 | 5,392.91 | 10,785.82 |
| **Rent - Redwood City** | 10,758.00 | 10,758.00 | 10,758.00 | 10,758.00 | 10,758.00 |
| **Storage** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Rent** | 16,150.91 | 16,150.91 | 10,758.00 | 16,150.91 | 21,543.82 |

**Douce France Bakery**
**Profit & Loss Cash Basis**
**January through December 2019**

|  | Jan 19 | Feb 19 | Mar 19 | Apr 19 | May 19 |
|---|---|---|---|---|---|
| **Repairs and Maintenance** | 672.87 | 171.27 | 547.85 | 308.73 | 318.71 |
| **Supplies** |  |  |  |  |  |
| Parts | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Uniforms Supplies | 0.00 | 0.00 | 55.00 | 0.00 | 0.00 |
| **Total Supplies** | 0.00 | 0.00 | 55.00 | 0.00 | 0.00 |
| **Telephone Expense** | 624.49 | 693.89 | 502.16 | 1,175.84 | 846.82 |
| **Utilities** |  |  |  |  |  |
| Electric & Gas | 2,603.41 | 3,032.02 | 3,306.09 | 2,851.41 | 608.69 |
| Garbage & Water | 0.00 | 1,470.78 | 1,257.76 | 0.00 | 637.49 |
| Gas | 700.26 | 0.00 | 0.00 | 0.00 | 0.00 |
| Water | 0.00 | 264.96 | 0.00 | 0.00 | 0.00 |
| Utilities - Other | 0.00 | 457.34 | 0.00 | 2,851.41 | 0.00 |
| **Total Utilities** | 3,303.67 | 5,225.10 | 4,563.85 | 5,702.82 | 1,246.18 |
| **Total Expense** | 55,054.39 | 58,473.73 | 49,853.25 | 45,152.72 | 59,223.61 |
| **Net Ordinary Income** | -30.50 | -13,212.86 | -7,498.76 | -6,902.52 | 2,627.13 |
| **Other Income/Expense** |  |  |  |  |  |
| **Other Expenses** |  |  |  |  |  |
| **Department of the Treasury** |  |  |  |  |  |
| IRS - EIN 77-0471256 | 1,000.00 | 1,000.00 | 0.00 | 0.00 | 0.00 |
| IRS - EIN 94-2864982 | 300.00 | 300.00 | 385.55 | 0.00 | 0.00 |
| **Total Department of the Treasury** | 1,300.00 | 1,300.00 | 385.55 | 0.00 | 0.00 |
| **Total Other Expense** | 1,300.00 | 1,300.00 | 385.55 | 0.00 | 0.00 |
| **Net Other Income** | -1,300.00 | -1,300.00 | -385.55 | 0.00 | 0.00 |
| **Net Income** | -1,330.50 | -14,512.86 | -7,884.31 | -6,902.52 | 2,627.13 |

## Douce France Bakery
## Profit & Loss Cash Basis
## January through December 2019

| | Jun 19 | Jul 19 | Aug 19 | Sep 19 | Oct 19 |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| **Income** | | | | | |
| **Discounts** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Fees** | 0.00 | 0.00 | 0.00 | 142.49 | 149.69 |
| **Sales** | | | | | |
| **Scrap** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Wholesale** | 100,861.21 | 94,158.92 | 135,998.02 | 90,930.96 | 77,253.83 |
| **Total Sales** | 100,861.21 | 94,158.92 | 135,998.02 | 90,930.96 | 77,253.83 |
| **Sales Discounts** | -1,825.14 | -1,789.53 | -6,222.58 | -5,034.36 | -5,130.76 |
| **Total Income** | 99,036.07 | 92,369.39 | 129,775.44 | 86,039.09 | 72,272.76 |
| **Cost of Goods Sold** | | | | | |
| **Cost of Goods Sold** | | | | | |
| **COGS-Dir Labor** | 17,427.29 | 46,702.44 | 33,565.51 | 23,045.91 | 38,766.28 |
| **COGS-Food** | 20,694.93 | 17,974.64 | 16,297.02 | 33,438.16 | 28,443.10 |
| **COGS-Paper** | 8,925.79 | 13,126.41 | 1,656.55 | 2,334.11 | 1,247.43 |
| **Total Cost of Goods Sold** | 47,048.01 | 77,803.49 | 51,519.08 | 58,818.18 | 68,456.81 |
| **Total COGS** | 47,048.01 | 77,803.49 | 51,519.08 | 58,818.18 | 68,456.81 |
| **Gross Profit** | 51,988.06 | 14,565.90 | 78,256.36 | 27,220.91 | 3,815.95 |
| **Expense** | | | | | |
| **Accounting & Bookkeeping** | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| **Advertising and Promotion** | 0.00 | 0.00 | 0.00 | 230.13 | 334.19 |
| **Automobile Expense** | | | | | |
| **Citation** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Fuel** | 1,302.56 | 1,231.93 | 1,087.25 | 977.95 | 917.97 |

**Douce France Bakery**
**Profit & Loss Cash Basis**
**January through December 2019**

|  | Jun 19 | Jul 19 | Aug 19 | Sep 19 | Oct 19 |
|---|---|---|---|---|---|
| **Insurance** | 0.00 | 0.00 | 0.00 | 163.00 | 733.60 |
| **R&M** | 0.00 | 0.00 | 1,451.50 | 441.48 | 0.00 |
| **Registration** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Rental** | 0.00 | 0.00 | 0.00 | 277.20 | 0.00 |
| Tolls, Parking, Etc. | 270.00 | 276.50 | 270.00 | 270.00 | 270.05 |
| **Total Automobile Expense** | 1,572.56 | 1,508.43 | 2,808.75 | 2,129.63 | 1,921.62 |
| **Bank Service Charges** | 1,891.59 | 1,741.72 | 768.13 | 1,071.35 | 842.46 |
| **Business Licenses and Permits** | 563.00 | 0.00 | 701.90 | 150.00 | 0.00 |
| **Computer and Internet Expenses** | 0.00 | 83.96 | 42.93 | 0.00 | 104.98 |
| **Contract Labor** | 0.00 | 800.00 | 5,852.00 | 1,786.54 | 1,745.66 |
| **Day Labor** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Donation** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Dues, Subscriptions, Membership** | 202.99 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Equipment** | | | | | |
| **Maintenance** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Rental** | 0.00 | 0.00 | 0.00 | 277.20 | 0.00 |
| **Total Equipment** | 0.00 | 0.00 | 0.00 | 277.20 | 0.00 |
| **Insurance Expense** | | | | | |
| **Commercial  Umbrella Policy** | 0.00 | 0.00 | 0.00 | 0.00 | 286.00 |
| **Liability Insurance** | 0.00 | 0.00 | 0.00 | -12.34 | 933.80 |
| **Life Insurance** | 119.09 | 0.00 | 238.18 | 0.00 | 0.00 |
| **Worker's Compensation** | 538.56 | 631.19 | 1,621.30 | 3,417.75 | 2,199.65 |
| **Insurance Expense - Other** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Insurance Expense** | 657.65 | 631.19 | 1,859.48 | 3,405.41 | 3,419.45 |

**Douce France Bakery**
**Profit & Loss Cash Basis**
**January through December 2019**

| | Jun 19 | Jul 19 | Aug 19 | Sep 19 | Oct 19 |
|---|---|---|---|---|---|
| **Interest Expense** | | | | | |
| Finance Charge | 1,035.45 | 589.24 | 1,371.97 | 773.22 | 749.81 |
| **Loan Interest** | | | | | |
| Channel Partners Loan Inte | 1,000.00 | 100.00 | 350.00 | 500.00 | 0.00 |
| Forward Financing | 0.00 | 200.00 | 1,125.00 | 0.00 | 150.00 |
| Heritage SBA Loan Interest | 4,649.70 | 0.00 | 0.00 | 0.00 | 0.00 |
| SSI LLC Loan_Interest Expe | 4,480.00 | 0.00 | 0.00 | 0.00 | 479.45 |
| UFS. | 5,153.04 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Loan Interest | 15,282.74 | 300.00 | 1,475.00 | 500.00 | 629.45 |
| **Total Interest Expense** | 16,318.19 | 889.24 | 2,846.97 | 1,273.22 | 1,379.26 |
| **Legal Fees** | 0.00 | 0.00 | 0.00 | 0.00 | 25,000.00 |
| **Merchant Account Fees** | 1,035.94 | 858.90 | 1,352.03 | 282.49 | 145.00 |
| **Office Admin & Supplies** | 652.01 | 203.90 | 339.26 | 533.47 | 967.72 |
| **Payroll Expenses** | | | | | |
| Fees | 169.12 | 0.00 | 249.68 | 171.16 | 257.50 |
| Salaries & Wages | 6,862.63 | 6,813.56 | 8,037.00 | 8,836.04 | 8,880.85 |
| Taxes | 513.29 | 676.93 | 461.58 | 450.55 | 507.73 |
| Total Payroll Expenses | 7,545.04 | 7,490.49 | 8,748.26 | 9,457.75 | 9,646.08 |
| **Pest Control** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Rent** | | | | | |
| Rent - Hayward, 1 & 2 | 0.00 | 10,785.82 | 0.00 | 10,785.82 | 1,217.75 |
| Rent - Redwood City | 10,758.00 | 10,758.00 | 10,758.00 | 10,758.00 | 10,500.00 |
| Storage | 0.00 | 0.00 | 0.00 | 0.00 | 326.00 |
| Total Rent | 10,758.00 | 21,543.82 | 10,758.00 | 21,543.82 | 12,043.75 |

**Douce France Bakery**
**Profit & Loss Cash Basis**
**January through December 2019**

| | Jun 19 | Jul 19 | Aug 19 | Sep 19 | Oct 19 |
|---|---|---|---|---|---|
| **Repairs and Maintenance** | 492.66 | 6.23 | 314.89 | 226.99 | 782.16 |
| **Supplies** | | | | | |
|   Parts | 47.58 | 0.00 | 0.00 | 0.00 | 0.00 |
|   Uniforms Supplies | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Supplies** | 47.58 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Telephone Expense** | 858.65 | 547.57 | 672.47 | 322.04 | 1,451.96 |
| **Utilities** | | | | | |
|   Electric & Gas | 6,202.09 | 0.00 | 3,944.35 | 2,166.87 | 2,589.52 |
|   Garbage & Water | 1,334.84 | 0.00 | 657.53 | 1,989.12 | 0.00 |
|   Gas | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   Water | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   Utilities - Other | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Utilities** | 7,536.93 | 0.00 | 4,601.88 | 4,155.99 | 2,589.52 |
| **Total Expense** | 51,132.79 | 37,305.45 | 42,666.95 | 47,846.03 | 63,373.81 |
| **Net Ordinary Income** | 855.27 | -22,739.55 | 35,589.41 | -20,625.12 | -59,557.86 |
| **Other Income/Expense** | | | | | |
|   **Other Expenses** | | | | | |
|   **Department of the Treasury** | | | | | |
|    IRS - EIN 77-0471256 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|    IRS - EIN 94-2864982 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|   **Total Department of the Treasury** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
|  **Total Other Expense** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Net Other Income** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 855.27 | -22,739.55 | 35,589.41 | -20,625.12 | -59,557.86 |

# Douce France Bakery
## Profit & Loss Cash Basis
### January through December 2019

|  | Nov 19 | Dec 19 | TOTAL |
|---|---|---|---|
| **Ordinary Income/Expense** | | | |
| **Income** | | | |
| **Discounts** | 0.00 | 0.00 | 2.60 |
| **Fees** | 156.63 | 122.81 | 571.62 |
| **Sales** | | | |
| **Scrap** | 0.00 | 0.00 | -46.20 |
| **Wholesale** | 81,987.04 | 105,443.66 | 1,199,540.14 |
| **Total Sales** | 81,987.04 | 105,443.66 | 1,199,493.94 |
| **Sales Discounts** | -1,687.46 | -5,532.43 | -46,906.13 |
| **Total Income** | 80,456.21 | 100,034.04 | 1,153,162.03 |
| **Cost of Goods Sold** | | | |
| **Cost of Goods Sold** | | | |
| **COGS-Dir Labor** | 26,340.17 | 38,166.90 | 349,429.90 |
| **COGS-Food** | 14,435.22 | 33,341.66 | 265,203.89 |
| **COGS-Paper** | 1,970.45 | 6,044.34 | 59,749.36 |
| **Total Cost of Goods Sold** | 42,745.84 | 77,552.90 | 674,383.15 |
| **Total COGS** | 42,745.84 | 77,552.90 | 674,383.15 |
| **Gross Profit** | 37,710.37 | 22,481.14 | 478,778.88 |
| **Expense** | | | |
| **Accounting & Bookkeeping** | 1,776.00 | 1,500.00 | 18,247.75 |
| **Advertising and Promotion** | 0.00 | 0.00 | 702.36 |
| **Automobile Expense** | | | |
| **Citation** | 0.00 | 0.00 | 118.00 |
| **Fuel** | 924.38 | 758.65 | 13,162.27 |

# Douce France Bakery
## Profit & Loss Cash Basis
### January through December 2019

| | Nov 19 | Dec 19 | TOTAL |
|---|---|---|---|
| Insurance | 0.00 | 733.60 | 6,086.11 |
| R&M | 190.00 | 1,624.91 | 5,131.51 |
| Registration | 0.00 | 0.00 | 602.00 |
| Rental | 587.02 | 1,086.20 | 1,950.42 |
| Tolls, Parking, Etc. | 5.70 | 235.91 | 3,044.36 |
| Total Automobile Expense | 1,707.10 | 4,439.27 | 30,094.67 |
| Bank Service Charges | 769.52 | 1,366.91 | 15,465.28 |
| Business Licenses and Permits | 0.00 | 0.00 | 1,414.90 |
| Computer and Internet Expenses | 1,361.21 | 44.97 | 1,884.80 |
| Contract Labor | 2,647.59 | 1,631.06 | 16,440.38 |
| Day Labor | 0.00 | 0.00 | 8,310.01 |
| Donation | 0.00 | 0.00 | 578.30 |
| Dues, Subscriptions, Membership | 0.00 | 0.00 | 202.99 |
| Equipment | | | |
| Maintenance | 0.00 | 0.00 | 1,577.25 |
| Rental | 0.00 | 2,086.76 | 2,363.96 |
| Total Equipment | 0.00 | 2,086.76 | 3,941.21 |
| Insurance Expense | | | |
| Commercial  Umbrella Policy | 0.00 | 286.00 | 1,559.65 |
| Liability Insurance | 0.00 | 805.58 | 4,334.25 |
| Life Insurance | 0.00 | 0.00 | 952.72 |
| Worker's Compensation | 1,841.18 | 1,025.44 | 14,101.51 |
| Insurance Expense - Other | 0.00 | 0.00 | 20.00 |
| Total Insurance Expense | 1,841.18 | 2,117.02 | 20,968.13 |

## Douce France Bakery
## Profit & Loss Cash Basis
### January through December 2019

| | Nov 19 | Dec 19 | TOTAL |
|---|---|---|---|
| **Interest Expense** | | | |
|   Finance Charge | 791.52 | 359.48 | 10,987.62 |
|   Loan Interest | | | |
|     Channel Partners Loan Inter | 0.00 | 0.00 | 39,316.60 |
|     Forward Financing | 97.50 | 390.00 | 1,962.50 |
|     Heritage SBA Loan Interest | 0.00 | 0.00 | 12,935.37 |
|     SSI LLC Loan_Interest Expe | 0.00 | 0.00 | 23,719.45 |
|     UFS. | 0.00 | 0.00 | 5,153.04 |
|   Total Loan Interest | 97.50 | 390.00 | 83,086.96 |
| **Total Interest Expense** | 889.02 | 749.48 | 94,074.58 |
| **Legal Fees** | 15,000.00 | 0.00 | 45,000.00 |
| **Merchant Account Fees** | 161.91 | 127.05 | 6,811.80 |
| **Office Admin & Supplies** | 1,442.18 | 1,828.80 | 7,543.31 |
| **Payroll Expenses** | | | |
|   Fees | 265.14 | 165.28 | 2,179.78 |
|   Salaries & Wages | 6,933.75 | 18,587.90 | 92,515.15 |
|   Taxes | 499.06 | 1,675.97 | 7,070.75 |
| **Total Payroll Expenses** | 7,697.95 | 20,429.15 | 101,765.68 |
| **Pest Control** | 0.00 | 0.00 | 282.00 |
| **Rent** | | | |
|   Rent - Hayward, 1 & 2 | 0.00 | 0.00 | 49,753.94 |
|   Rent - Redwood City | 10,500.00 | 10,500.00 | 128,322.00 |
|   Storage | 282.00 | 1,122.00 | 1,730.00 |
| **Total Rent** | 10,782.00 | 11,622.00 | 179,805.94 |

## Douce France Bakery
## Profit & Loss Cash Basis
## January through December 2019

|                                      | Nov 19      | Dec 19      | TOTAL        |
|--------------------------------------|-------------|-------------|--------------|
| Repairs and Maintenance              | 29.62       | 1,155.42    | 5,027.40     |
| **Supplies**                         |             |             |              |
|   Parts                    | 0.00        | 0.00        | 47.58        |
|   Uniforms Supplies        | 0.00        | 0.00        | 55.00        |
| **Total Supplies**                   | 0.00        | 0.00        | 102.58       |
| Telephone Expense                    | 606.71      | 80.25       | 8,382.85     |
| **Utilities**                        |             |             |              |
|   Electric & Gas           | 5,137.00    | 250.00      | 32,691.45    |
|   Garbage & Water          | 0.00        | 658.00      | 8,005.52     |
|   Gas                      | 0.00        | 0.00        | 700.26       |
|   Water                    | 0.00        | 0.00        | 264.96       |
|   Utilities - Other        | 0.00        | 0.00        | 3,308.75     |
| **Total Utilities**                  | 5,137.00    | 908.00      | 44,970.94    |
| **Total Expense**                    | 51,848.99   | 50,086.14   | 612,017.86   |
| **Net Ordinary Income**              | -14,138.62  | -27,605.00  | -133,238.98  |
| **Other Income/Expense**             |             |             |              |
|   **Other Expenses**       |             |             |              |
|   **Department of the Treasury** |       |             |              |
|     IRS - EIN 77-0471256 | 0.00 | 0.00        | 2,000.00     |
|     IRS - EIN 94-2864982 | 0.00 | 0.00        | 985.55       |
|     **Total Department of the Treasury** | 0.00 | 0.00 | 2,985.55 |
|   **Total Other Expense**  | 0.00        | 0.00        | 2,985.55     |
| **Net Other Income**                 | 0.00        | 0.00        | -2,985.55    |
| **Net Income**                       | -14,138.62  | -27,605.00  | -136,224.53  |

Exhibit "B"

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

Accrual Basis

| | Jan 29 - 31, 20 | Feb 20 | Mar 20 | Apr 20 | May 20 |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| Income | | | | | |
| Fees | 10.83 | 102.77 | 98.24 | 84.44 | 57.01 |
| Sales | | | | | |
| Wholesale | 27,000.22 | 83,169.90 | 57,653.58 | 65,222.49 | 52,256.12 |
| Total Sales | 27,000.22 | 83,169.90 | 57,653.58 | 65,222.49 | 52,256.12 |
| Sales Discounts | -188.10 | -4,142.66 | -1,330.44 | -1,764.18 | -2,737.52 |
| Total Income | 26,822.95 | 79,130.01 | 56,421.38 | 63,542.75 | 49,575.61 |
| Cost of Goods Sold | | | | | |
| Cost of Goods Sold | | | | | |
| COGS-Food | 1,625.24 | 15,822.25 | 12,678.81 | 8,023.74 | 12,024.83 |
| COGS-Labor | 822.10 | 25,092.83 | 22,680.44 | 15,804.53 | 12,094.51 |
| COGS-Paper | 0.00 | 2,010.76 | 2,009.20 | 5,388.55 | 919.24 |
| Freight Costs | 0.00 | 0.00 | 0.00 | 194.47 | 0.00 |
| Total Cost of Goods Sold | 2,447.34 | 42,925.84 | 37,368.45 | 29,411.29 | 25,038.58 |
| Total COGS | 2,447.34 | 42,925.84 | 37,368.45 | 29,411.29 | 25,038.58 |
| Gross Profit | 24,375.61 | 36,204.17 | 19,052.93 | 34,131.46 | 24,537.03 |
| Expense | | | | | |
| Accounting & Bookkeeping | 0.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Advertising and Promotion | 0.00 | 0.00 | 0.00 | 999.00 | 0.00 |
| Automobile Expense | | | | | |
| Fuel | 170.48 | 702.63 | 614.77 | 580.47 | 462.92 |
| Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| R&M | 0.00 | 21.94 | 557.78 | 763.68 | 266.11 |
| Tolls, Parking, Etc. | 0.00 | 0.00 | 214.75 | 105.00 | 130.00 |
| Total Automobile Expense | 170.48 | 724.57 | 1,387.30 | 1,449.15 | 859.03 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

| | Jun 20 | Jul 20 | Aug 20 | Sep 20 | Oct 20 |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| Income | | | | | |
| Fees | 76.04 | 55.38 | 26.32 | 61.20 | 54.37 |
| Sales | | | | | |
| Wholesale | 63,117.75 | 64,360.13 | 63,989.82 | 70,732.95 | 66,935.11 |
| Total Sales | 63,117.75 | 64,360.13 | 63,989.82 | 70,732.95 | 66,935.11 |
| Sales Discounts | -1,358.74 | -1,048.88 | -1,575.32 | -1,639.90 | -1,606.08 |
| Total Income | 61,835.05 | 63,366.63 | 62,440.82 | 69,154.25 | 65,383.40 |
| Cost of Goods Sold | | | | | |
| Cost of Goods Sold | | | | | |
| COGS-Food | 11,371.64 | 13,811.71 | 17,442.62 | 12,147.38 | 18,547.37 |
| COGS-Labor | 10,488.34 | 16,318.54 | 17,310.51 | 22,931.88 | 21,076.05 |
| COGS-Paper | 775.62 | 3,539.06 | 2,300.27 | 4,549.58 | 549.00 |
| Freight Costs | 0.00 | 0.00 | 11.00 | 0.00 | 549.35 |
| Total Cost of Goods Sold | 22,635.60 | 33,669.31 | 37,064.40 | 39,628.84 | 40,721.77 |
| Total COGS | 22,635.60 | 33,669.31 | 37,064.40 | 39,628.84 | 40,721.77 |
| Gross Profit | 39,199.45 | 29,697.32 | 25,376.42 | 29,525.41 | 24,661.63 |
| Expense | | | | | |
| Accounting & Bookkeeping | 1,000.00 | 1,500.00 | 500.00 | 1,000.00 | 1,975.00 |
| Advertising and Promotion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Automobile Expense | | | | | |
| Fuel | 715.30 | 753.98 | 507.69 | 630.71 | 621.17 |
| Insruance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| R&M | 193.00 | 370.33 | 0.00 | 56.83 | 0.00 |
| Tolls, Parking, Etc. | 260.00 | 260.00 | 205.00 | 164.75 | 205.00 |
| Total Automobile Expense | 1,168.30 | 1,384.31 | 712.69 | 852.29 | 826.17 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

| | Nov 20 | Dec 20 | TOTAL |
|---|---|---|---|
| **Ordinary Income/Expense** | | | |
| Income | | | |
| Fees | 42.86 | 98.20 | 767.66 |
| Sales | | | |
| Wholesale | 60,192.02 | 91,380.01 | 766,010.10 |
| Total Sales | 60,192.02 | 91,380.01 | 766,010.10 |
| Sales Discounts | -1,497.87 | -2,185.21 | -21,074.90 |
| Total Income | 58,737.01 | 89,293.00 | 745,702.86 |
| Cost of Goods Sold | | | |
| Cost of Goods Sold | | | |
| COGS-Food | 11,351.02 | 19,794.01 | 154,640.62 |
| COGS-Labor | 24,714.86 | 25,764.90 | 215,099.49 |
| COGS-Paper | 950.91 | 8,372.12 | 31,364.31 |
| Freight Costs | 0.00 | 0.00 | 754.82 |
| Total Cost of Goods Sold | 37,016.79 | 53,931.03 | 401,859.24 |
| Total COGS | 37,016.79 | 53,931.03 | 401,859.24 |
| Gross Profit | 21,720.22 | 35,361.97 | 343,843.62 |
| Expense | | | |
| Accounting & Bookkeeping | 1,000.00 | 1,000.00 | 11,975.00 |
| Advertising and Promotion | 1,750.00 | 0.00 | 2,749.00 |
| Automobile Expense | | | |
| Fuel | 597.74 | 689.92 | 7,047.78 |
| Insurance | 0.00 | 1,003.72 | 1,003.72 |
| R&M | 0.00 | 0.00 | 2,229.67 |
| Tolls, Parking, Etc. | 0.00 | 0.00 | 1,544.50 |
| Total Automobile Expense | 597.74 | 1,693.64 | 11,825.67 |

Profit & Loss
January 29 through Dec 31, 2020                                                     Accrual Basis

| | Jan 29 - 31, 20 | Feb 20 | Mar 20 | Apr 20 | May 20 |
|---|---|---|---|---|---|
| Bank Service Charges | 40.00 | 70.00 | 68.10 | 55.50 | 50.00 |
| Business Licenses and Perr | 0.00 | 3,087.60 | 0.00 | 425.00 | 0.00 |
| Computer and Internet Expe | 0.00 | 0.00 | 53.97 | 23.99 | 23.99 |
| Dues, Subscriptions, Membe | 0.00 | 0.00 | 0.00 | 78.00 | 0.00 |
| Equipment | | | | | |
|    Rental | 0.00 | 713.38 | 4,200.66 | 0.00 | 0.00 |
| Total Equipment | 0.00 | 713.38 | 4,200.66 | 0.00 | 0.00 |
| Insurance Expense | | | | | |
|    Commercial  Umbrella I | 0.00 | 0.00 | 885.07 | 0.00 | 1,431.14 |
|    Liability Insurance | 0.00 | 375.27 | 0.00 | 0.00 | 0.00 |
|    Worker's Compensatior | 0.00 | 151.30 | 3,596.17 | 0.00 | 3,205.85 |
| Total Insurance Expense | 0.00 | 526.57 | 4,481.24 | 0.00 | 4,636.99 |
| Merchant Account Fees | 0.00 | 1,300.70 | 392.70 | 586.46 | 751.83 |
| Moving Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Office Admin & Supplies | 0.00 | 453.69 | 93.95 | 616.48 | 0.00 |
| Payroll Expenses | | | | | |
|    Fees | 0.00 | 432.14 | 0.00 | 10.00 | 143.84 |
|    Salaries & Wages | 0.00 | 15,837.90 | 14,076.80 | 12,062.85 | 12,730.70 |
|    Taxes | 0.00 | 4,296.61 | -825.93 | 1,120.52 | -3,478.72 |
| Total Payroll Expenses | 0.00 | 20,566.65 | 13,250.87 | 13,193.37 | 9,395.82 |
| Rent | | | | | |
|    Redwood City | 0.00 | 13,168.00 | 10,500.00 | 0.00 | 0.00 |
|    Storage | 0.00 | 542.00 | 271.00 | 0.00 | 0.00 |
| Total Rent | 0.00 | 13,710.00 | 10,771.00 | 0.00 | 0.00 |
| Repairs and Maintenance | 0.00 | 98.22 | 92.00 | 130.79 | 123.00 |

Profit & Loss

| | Jun 20 | Jul 20 | Aug 20 | Sep 20 | Oct 20 |
|---|---|---|---|---|---|
| Bank Service Charges | 75.00 | 59.00 | 48.89 | 0.00 | 0.00 |
| Business Licenses and Perr | 0.00 | 0.00 | 0.00 | 0.00 | 165.00 |
| Computer and Internet Expe | 23.99 | 23.99 | 23.99 | 23.99 | 23.99 |
| Dues, Subscriptions, Membe | 190.00 | 0.00 | 282.00 | 249.00 | 271.50 |
| Equipment | | | | | |
| Rental | 713.38 | 1,719.38 | 2,456.76 | 713.38 | 713.38 |
| Total Equipment | 713.38 | 1,719.38 | 2,456.76 | 713.38 | 713.38 |
| Insurance Expense | | | | | |
| Commercial  Umbrella I | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Liability Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Worker's Compensatior | 0.00 | 0.00 | 3,909.17 | 0.00 | 0.00 |
| Total Insurance Expense | 0.00 | 0.00 | 3,909.17 | 0.00 | 0.00 |
| Merchant Account Fees | 1,762.15 | 82.93 | 356.77 | 473.63 | 61.77 |
| Moving Expense | 4,094.73 | 13,684.29 | 7,385.35 | 5,257.38 | 3,390.53 |
| Office Admin & Supplies | 45.77 | 166.64 | 12.99 | 467.04 | 1,289.23 |
| Payroll Expenses | | | | | |
| Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Salaries & Wages | 10,038.00 | 8,418.60 | 8,604.00 | 7,000.00 | 11,081.00 |
| Taxes | -2,812.07 | -4,539.95 | -4,669.83 | -5,132.75 | -5,338.05 |
| Total Payroll Expenses | 7,225.93 | 3,878.65 | 3,934.17 | 1,867.25 | 5,742.95 |
| Rent | | | | | |
| Redwood City | 10,000.00 | 4,500.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Storage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Rent | 10,000.00 | 4,500.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Repairs and Maintenance | 25.47 | 156.91 | 500.00 | 179.68 | 772.00 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

Accrual Basis

| | Nov 20 | Dec 20 | TOTAL |
|---|---|---|---|
| Bank Service Charges | 40.00 | 60.00 | 566.49 |
| Business Licenses and Perr | 0.00 | 0.00 | 3,677.60 |
| Computer and Internet Expe | 23.99 | 23.99 | 269.88 |
| Dues, Subscriptions, Membe | 369.00 | 9.99 | 1,449.49 |
| Equipment | | | |
|    Rental | 713.38 | 713.38 | 12,657.08 |
| Total Equipment | 713.38 | 713.38 | 12,657.08 |
| Insurance Expense | | | |
|    Commercial  Umbrella I | 265.65 | 0.00 | 2,581.86 |
|    Liability Insurance | 432.89 | 0.00 | 808.16 |
|    Worker's Compensatior | 0.00 | 0.00 | 10,862.49 |
| Total Insurance Expense | 698.54 | 0.00 | 14,252.51 |
| Merchant Account Fees | 679.71 | 748.87 | 7,197.52 |
| Moving Expense | 2,022.61 | 3,505.34 | 39,340.23 |
| Office Admin & Supplies | 338.92 | 227.57 | 3,712.28 |
| Payroll Expenses | | | |
|    Fees | 0.00 | 280.00 | 865.98 |
|    Salaries & Wages | 7,674.49 | 4,885.60 | 112,409.94 |
|    Taxes | -5,773.69 | -5,098.08 | -32,251.94 |
| Total Payroll Expenses | 1,900.80 | 67.52 | 81,023.98 |
| Rent | | | |
|    Redwood City | 10,000.00 | 10,000.00 | 88,168.00 |
|    Storage | 0.00 | 0.00 | 813.00 |
| Total Rent | 10,000.00 | 10,000.00 | 88,981.00 |
| Repairs and Maintenance | 600.00 | 4,982.81 | 7,660.88 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

| | Jan 29 - 31, 20 | Feb 20 | Mar 20 | Apr 20 | May 20 |
|---|---|---|---|---|---|
| Taxes | | | | | |
|    Property | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Telephone Expense | 0.00 | 0.00 | 570.00 | 0.00 | 301.04 |
| Trustee Fee | 0.00 | 0.00 | 0.00 | 1,625.00 | 0.00 |
| Utilities | | | | | |
|    Electric & Gas | 0.00 | 0.00 | 2,071.29 | 0.00 | 2,903.13 |
|    Garbage & Water | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Utilities | 0.00 | 0.00 | 2,071.29 | 0.00 | 2,903.13 |
| Total Expense | 210.48 | 42,251.38 | 38,433.08 | 20,182.74 | 20,044.83 |
| Net Ordinary Income | 24,165.13 | -6,047.21 | -19,380.15 | 13,948.72 | 4,492.20 |
| Net Income | 24,165.13 | -6,047.21 | -19,380.15 | 13,948.72 | 4,492.20 |

Douce France Bakery
Profit & Loss
Accrual Basis
January 29 through Dec 31, 2020

|  | Jun 20 | July 20 | Aug 20 | Sep 20 | Oct 20 |
|---|---|---|---|---|---|
| Taxes |  |  |  |  |  |
| Property | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Telephone Expense | 769.92 | 471.46 | 1,461.04 | 734.89 | 1,724.66 |
| Trustee Fee | 0.00 | 975.00 | 0.00 | 0.00 | 1,625.00 |
| Utilities |  |  |  |  |  |
| Electric & Gas | 0.00 | 777.32 | 808.99 | 0.00 | 1,694.83 |
| Garbage & Water | 0.00 | 0.00 | 200.14 | 0.00 | 601.05 |
| Total Utilities | 0.00 | 777.32 | 1,009.13 | 0.00 | 2,295.88 |
| Total Expense | 27,094.64 | 29,379.88 | 32,592.95 | 21,818.53 | 30,877.06 |
| Net Ordinary Income | 12,104.81 | 317.44 | -7,216.53 | 7,706.88 | -6,215.43 |
| Net Income | 12,104.81 | 317.44 | -7,216.53 | 7,706.88 | -6,215.43 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

Accrual Basis

| | Nov 20 | Dec 20 | TOTAL |
|---|---|---|---|
| Taxes | | | |
|    Property | 332.00 | 83.00 | 415.00 |
| Total Taxes | 332.00 | 83.00 | 415.00 |
| Telephone Expense | 1,086.31 | 948.43 | 8,067.75 |
| Trustee Fee | 0.00 | 0.00 | 4,225.00 |
| Utilities | | | |
|    Electric & Gas | 0.00 | 2,225.49 | 10,481.05 |
|    Garbage & Water | 574.00 | 0.00 | 1,375.19 |
| Total Utilities | 574.00 | 2,225.49 | 11,856.24 |
| Total Expense | 22,727.00 | 26,290.03 | 311,902.60 |
| Net Ordinary Income | -1,006.78 | 9,071.94 | 31,941.02 |
| Net Income | -1,006.78 | 9,071.94 | 31,941.02 |

Exhibit "C"

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

| | Jan 29 - 31, 20 | Feb 20 | Mar 20 | Apr 20 | May 20 |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| Income | | | | | |
| Fees | 27.18 | 108.41 | 78.05 | 94.85 | 62.32 |
| Sales | | | | | |
| Wholesale | 9,628.20 | 84,951.34 | 58,575.22 | 44,933.85 | 57,292.76 |
| Total Sales | 9,628.20 | 84,951.34 | 58,575.22 | 44,933.85 | 57,292.76 |
| Sales Discounts | -61.80 | -4,051.88 | -1,159.23 | -1,708.65 | -2,952.64 |
| Total Income | 9,593.58 | 81,007.87 | 57,494.04 | 43,320.05 | 54,402.44 |
| Cost of Goods Sold | | | | | |
| Cost of Goods Sold | | | | | |
| COGS-Food | 158.42 | 9,207.59 | 13,648.88 | 8,504.18 | 13,458.17 |
| COGS-Labor | 822.10 | 25,092.83 | 22,680.44 | 15,804.53 | 12,094.51 |
| COGS-Paper | 0.00 | 1,468.55 | 608.80 | 611.50 | 5,521.17 |
| Freight Costs | 0.00 | 0.00 | 0.00 | 194.47 | 0.00 |
| Total Cost of Goods Sold | 980.52 | 35,768.97 | 36,938.12 | 25,114.68 | 31,073.85 |
| Total COGS | 980.52 | 35,768.97 | 36,938.12 | 25,114.68 | 31,073.85 |
| Gross Profit | 8,613.06 | 45,238.90 | 20,555.92 | 18,205.37 | 23,328.59 |
| Expense | | | | | |
| Accounting & Bookkeeping | 0.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| Advertising and Promotion | 0.00 | 0.00 | 0.00 | 999.00 | 0.00 |
| Automobile Expense | | | | | |
| Fuel | 170.48 | 702.63 | 614.77 | 580.47 | 462.92 |
| insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| R&M | 0.00 | 21.94 | 557.78 | 763.68 | 266.11 |
| Tolls, Parking, Etc. | 0.00 | 0.00 | 214.75 | 105.00 | 130.00 |
| Total Automobile Expense | 170.48 | 724.57 | 1,387.30 | 1,449.15 | 859.03 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

| | Jun 20 | July 20 | Aug 20 | Sep 20 | Cash Basis Oct 20 |
|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | |
| Income | | | | | |
| Fees | 54.68 | 79.40 | 31.16 | 51.25 | 58.46 |
| Sales | | | | | |
| Wholesale | 58,387.57 | 60,969.18 | 65,226.99 | 64,694.39 | 52,935.64 |
| Total Sales | 58,387.57 | 60,969.18 | 65,226.99 | 64,694.39 | 52,935.64 |
| Sales Discounts | -1,454.62 | -1,326.45 | -1,486.21 | -1,559.79 | -1,465.29 |
| Total Income | 56,987.63 | 59,722.13 | 63,771.94 | 63,185.85 | 51,528.81 |
| Cost of Goods Sold | | | | | |
| Cost of Goods Sold | | | | | |
| COGS-Food | 8,381.56 | 12,848.20 | 14,659.41 | 13,491.77 | 12,400.43 |
| COGS-Labor | 10,488.34 | 16,318.54 | 17,310.51 | 22,931.88 | 21,076.05 |
| COGS-Paper | 2,419.35 | 2,705.19 | 1,514.27 | 4,113.83 | 2,170.12 |
| Freight Costs | 0.00 | 0.00 | 11.00 | 0.00 | 549.35 |
| Total Cost of Goods Sold | 21,289.25 | 31,871.93 | 33,495.19 | 40,537.48 | 36,195.95 |
| Total COGS | 21,289.25 | 31,871.93 | 33,495.19 | 40,537.48 | 36,195.95 |
| Gross Profit | 35,698.38 | 27,850.20 | 30,276.75 | 22,648.37 | 15,332.86 |
| Expense | | | | | |
| Accounting & Bookkeeping | 1,000.00 | 1,500.00 | 500.00 | 1,000.00 | 1,975.00 |
| Advertising and Promotion | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Automobile Expense | | | | | |
| Fuel | 715.30 | 753.98 | 507.69 | 630.71 | 621.17 |
| insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| R&M | 193.00 | 370.33 | 0.00 | 56.83 | 0.00 |
| Tolls, Parking, Etc. | 260.00 | 260.00 | 205.00 | 164.75 | 205.00 |
| Total Automobile Expense | 1,168.30 | 1,384.31 | 712.69 | 852.29 | 826.17 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

|  | Nov 20 | Dec 20 | TOTAL |
|---|---|---|---|
| **Ordinary Income/Expense** |  |  |  |
| Income |  |  |  |
| Fees | 41.38 | 86.70 | 773.84 |
| Sales |  |  |  |
| Wholesale | 65,621.69 | 88,251.00 | 711,467.83 |
| Total Sales | 65,621.69 | 88,251.00 | 711,467.83 |
| Sales Discounts | -1,700.87 | -2,292.22 | -21,219.65 |
| Total Income | 63,962.20 | 86,045.48 | 691,022.02 |
| Cost of Goods Sold |  |  |  |
| Cost of Goods Sold |  |  |  |
| COGS-Food | 15,604.08 | 14,876.15 | 137,238.84 |
| COGS-Labor | 24,714.86 | 25,764.90 | 215,099.49 |
| COGS-Paper | 950.91 | 2,247.38 | 24,331.07 |
| Freight Costs | 0.00 | 0.00 | 754.82 |
| Total Cost of Goods Sold | 41,269.85 | 42,888.43 | 377,424.22 |
| Total COGS | 41,269.85 | 42,888.43 | 377,424.22 |
| Gross Profit | 22,692.35 | 43,157.05 | 313,597.80 |
| Expense |  |  |  |
| Accounting & Bookkeeping | 1,000.00 | 1,000.00 | 11,975.00 |
| Advertising and Promotion | 1,750.00 | 0.00 | 2,749.00 |
| Automobile Expense |  |  |  |
| Fuel | 597.74 | 689.92 | 7,047.78 |
| Insurance | 0.00 | 1,003.72 | 1,003.72 |
| R&M | 0.00 | 0.00 | 2,229.67 |
| Tolls, Parking, Etc. | 0.00 | 0.00 | 1,544.50 |
| Total Automobile Expense | 597.74 | 1,693.64 | 11,825.67 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

|  | Jan 29 - 31, 20 | Feb 20 | Mar 20 | Apr 20 | Cash May 20 |
|---|---|---|---|---|---|
| Bank Service Charges | 40.00 | 70.00 | 68.10 | 55.50 | 50.00 |
| Business Licenses and Perr | 0.00 | 3,087.60 | 0.00 | 425.00 | 0.00 |
| Computer and Internet Expe | 0.00 | 0.00 | 53.97 | 23.99 | 23.99 |
| Dues, Subscriptions, Membe | 0.00 | 0.00 | 0.00 | 78.00 | 0.00 |
| Equipment |  |  |  |  |  |
| Rental | 0.00 | 713.38 | 4,200.66 | 0.00 | 0.00 |
| Total Equipment | 0.00 | 713.38 | 4,200.66 | 0.00 | 0.00 |
| Insurance Expense |  |  |  |  |  |
| Commercial  Umbrella I | 0.00 | 0.00 | 885.07 | 0.00 | 1,431.14 |
| Liability Insurance | 0.00 | 375.27 | 0.00 | 0.00 | 0.00 |
| Worker's Compensatior | 0.00 | 151.30 | 3,596.17 | 0.00 | 3,205.85 |
| Total Insurance Expense | 0.00 | 526.57 | 4,481.24 | 0.00 | 4,636.99 |
| Merchant Account Fees | 0.00 | 1,300.70 | 392.70 | 586.46 | 751.83 |
| Moving Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Office Admin & Supplies | 0.00 | 453.69 | 93.95 | 616.48 | 0.00 |
| Payroll Expenses |  |  |  |  |  |
| Fees | 0.00 | 432.14 | 0.00 | 10.00 | 143.84 |
| Salaries & Wages | 0.00 | 15,837.90 | 14,076.80 | 12,062.85 | 12,730.70 |
| Taxes | 0.00 | 4,296.61 | -825.93 | 1,120.52 | -3,478.72 |
| Total Payroll Expenses | 0.00 | 20,566.65 | 13,250.87 | 13,193.37 | 9,395.82 |
| Rent |  |  |  |  |  |
| Redwood City | 0.00 | 13,168.00 | 10,500.00 | 0.00 | 0.00 |
| Storage | 0.00 | 542.00 | 271.00 | 0.00 | 0.00 |
| Total Rent | 0.00 | 13,710.00 | 10,771.00 | 0.00 | 0.00 |
| Repairs and Maintenance | 0.00 | 98.22 | 0.00 | 130.79 | 117.00 |

Profit & Loss

| | Jun 20 | Jul 20 | Aug 20 | Sep 20 | Oct 20 |
|---|---|---|---|---|---|
| Bank Service Charges | 75.00 | 59.00 | 48.89 | 0.00 | 0.00 |
| Business Licenses and Perr | 0.00 | 0.00 | 0.00 | 0.00 | 165.00 |
| Computer and Internet Expe | 23.99 | 23.99 | 23.99 | 23.99 | 23.99 |
| Dues, Subscriptions, Membe | 190.00 | 0.00 | 282.00 | 249.00 | 271.50 |
| Equipment | | | | | |
| Rental | 713.38 | 1,719.38 | 2,456.76 | 713.38 | 713.38 |
| Total Equipment | 713.38 | 1,719.38 | 2,456.76 | 713.38 | 713.38 |
| Insurance Expense | | | | | |
| Commercial  Umbrella I | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Liability Insurance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Worker's Compensation | 0.00 | 0.00 | 3,909.17 | 0.00 | 0.00 |
| Total Insurance Expense | 0.00 | 0.00 | 3,909.17 | 0.00 | 0.00 |
| Merchant Account Fees | 1,762.15 | 82.93 | 356.77 | 473.63 | 61.77 |
| Moving Expense | 4,094.73 | 13,684.29 | 7,385.35 | 5,257.38 | 3,390.53 |
| Office Admin & Supplies | 45.77 | 166.64 | 12.99 | 467.04 | 1,289.23 |
| Payroll Expenses | | | | | |
| Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Salaries & Wages | 10,038.00 | 8,418.60 | 8,604.00 | 7,000.00 | 11,081.00 |
| Taxes | -2,812.07 | -4,539.95 | -4,669.83 | -5,132.75 | -5,338.05 |
| Total Payroll Expenses | 7,225.93 | 3,878.65 | 3,934.17 | 1,867.25 | 5,742.95 |
| Rent | | | | | |
| Redwood City | 10,000.00 | 4,500.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Storage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Rent | 10,000.00 | 4,500.00 | 10,000.00 | 10,000.00 | 10,000.00 |
| Repairs and Maintenance | 25.47 | 156.91 | 500.00 | 179.68 | 772.00 |

Profit & Loss

| | Nov 20 | Dec 20 | TOTAL |
|---|---|---|---|
| Bank Service Charges | 40.00 | 60.00 | 566.49 |
| Business Licenses and Perr | 0.00 | 0.00 | 3,677.60 |
| Computer and Internet Expe | 23.99 | 23.99 | 269.88 |
| Dues, Subscriptions, Membe | 369.00 | 9.99 | 1,449.49 |
| Equipment | | | |
|    Rental | 713.38 | 713.38 | 12,657.08 |
| Total Equipment | 713.38 | 713.38 | 12,657.08 |
| Insurance Expense | | | |
|    Commercial  Umbrella I | 265.65 | 0.00 | 2,581.86 |
|    Liability Insurance | 432.89 | 0.00 | 808.16 |
|    Worker's Compensation | 0.00 | 0.00 | 10,862.49 |
| Total Insurance Expense | 698.54 | 0.00 | 14,252.51 |
| Merchant Account Fees | 679.71 | 748.87 | 7,197.52 |
| Moving Expense | 2,022.61 | 3,505.34 | 39,340.23 |
| Office Admin & Supplies | 338.92 | 227.57 | 3,712.28 |
| Payroll Expenses | | | |
|    Fees | 0.00 | 280.00 | 865.98 |
|    Salaries & Wages | 7,674.49 | 4,885.60 | 112,409.94 |
|    Taxes | -5,773.69 | -5,098.08 | -32,251.94 |
| Total Payroll Expenses | 1,900.80 | 67.52 | 81,023.98 |
| Rent | | | |
|    Redwood City | 10,000.00 | 10,000.00 | 88,168.00 |
|    Storage | 0.00 | 0.00 | 813.00 |
| Total Rent | 10,000.00 | 10,000.00 | 88,981.00 |
| Repairs and Maintenance | 600.00 | 4,982.81 | 7,562.88 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

| | Jan 29 - 31, 20 | Feb 20 | Mar 20 | Apr 20 | Cash May 20 |
|---|---|---|---|---|---|
| Taxes | | | | | |
| Property | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Telephone Expense | 0.00 | 0.00 | 570.00 | 0.00 | 301.04 |
| Trustee Fee | 0.00 | 0.00 | 0.00 | 1,625.00 | 0.00 |
| Utilities | | | | | |
| Electric & Gas | 0.00 | 0.00 | 2,071.29 | 0.00 | 2,903.13 |
| Garbage & Water | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Utilities | 0.00 | 0.00 | 2,071.29 | 0.00 | 2,903.13 |
| Total Expense | 210.48 | 42,251.38 | 38,341.08 | 20,182.74 | 20,038.83 |
| Net Ordinary Income | 8,402.58 | 2,987.52 | -17,785.16 | -1,977.37 | 3,289.76 |
| Net Income | 8,402.58 | 2,987.52 | -17,785.16 | -1,977.37 | 3,289.76 |

Profit & Loss
January 29 through Dec 31, 2020

|  | Jun 20 | Jul 20 | Aug 20 | Sep 20 | Cash Oct 20 |
|---|---|---|---|---|---|
| Taxes |  |  |  |  |  |
| Property | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Total Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Telephone Expense | 769.92 | 471.46 | 1,461.04 | 734.89 | 1,724.66 |
| Trustee Fee | 0.00 | 975.00 | 0.00 | 0.00 | 1,625.00 |
| Utilities |  |  |  |  |  |
| Electric & Gas | 0.00 | 777.32 | 808.99 | 0.00 | 1,694.83 |
| Garbage & Water | 0.00 | 0.00 | 200.14 | 0.00 | 601.05 |
| Total Utilities | 0.00 | 777.32 | 1,009.13 | 0.00 | 2,295.88 |
| Total Expense | 27,094.64 | 29,379.88 | 32,592.95 | 21,818.53 | 30,877.06 |
| Net Ordinary Income | 8,603.74 | -1,529.68 | -2,316.20 | 829.84 | -15,544.20 |
| Net Income | 8,603.74 | -1,529.68 | -2,316.20 | 829.84 | -15,544.20 |

Douce France Bakery
Profit & Loss
January 29 through Dec 31, 2020

Cash

| | Nov 20 | Dec 20 | TOTAL |
|---|---|---|---|
| Taxes | | | |
|     Property | 332.00 | 83.00 | 415.00 |
| Total Taxes | 332.00 | 83.00 | 415.00 |
| Telephone Expense | 1,086.31 | 948.43 | 8,067.75 |
| Trustee Fee | 0.00 | 0.00 | 4,225.00 |
| Utilities | | | |
|     Electric & Gas | 0.00 | 2,225.49 | 10,481.05 |
|     Garbage & Water | 574.00 | 0.00 | 1,375.19 |
| Total Utilities | 574.00 | 2,225.49 | 11,856.24 |
| Total Expense | 22,727.00 | 26,290.03 | 311,804.60 |
| Net Ordinary Income | -34.65 | 16,867.02 | 1,793.20 |
| Net Income | -34.65 | 16,867.02 | 1,793.20 |

Exhibit "D"

**Douce France Bakery**

# A/P Aging Summary

**As of December 31, 2020**

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| **BakeMark** | 4,066.75 | 0.00 | 0.00 | 0.00 | 0.00 | 4,066.75 |
| **Gillis & Lane** | 3,469.24 | 0.00 | 0.00 | 0.00 | 0.00 | 3,469.24 |
| **JBS Bakeservice** | 5,726.05 | 4,806.35 | 0.00 | 0.00 | 0.00 | 10,532.40 |
| **Sigona's Farmers Market - v** | 0.00 | 0.00 | 1,711.04 | 219.75 | 871.84 | 2,802.63 |
| **Sol-Pak** | 3,564.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,564.00 |
| **Western Exterminator** | 0.00 | 0.00 | 0.00 | 0.00 | 98.00 | 98.00 |
| **TOTAL** | **16,826.04** | **4,806.35** | **1,711.04** | **219.75** | **969.84** | **24,533.02** |

Exhibit "E"

**Douce France Bakery**
**A/R Aging Summary**                                                                          **Page 1**
As of Dec 31, 2020

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL | |
|---|---|---|---|---|---|---|---|
| La Cocina De La Abuel | 0.00 | 0.00 | 0.00 | 12.00 | 0.00 | 12.00 | |
| Mollie Stones | 0.00 | 0.00 | 0.00 | 0.00 | -500.00 | -500.00 | |
| Luisa Aguilara Rios | 0.00 | 0.00 | 0.00 | 0.00 | 475.20 | 475.20 | |
| Dawn Foods | 0.00 | 2,979.84 | 0.00 | 0.00 | 0.00 | 2,979.84 | |
| Delucchi's Market | 0.00 | 0.00 | 0.00 | 48.85 | -15.05 | 33.80 | |
| Douce d'France | -406.85 | 0.00 | 0.00 | 0.00 | 0.00 | -406.85 | |
| EMPLOYEE | | | | | | | |
|   NIVARDO | 0.00 | 0.00 | 0.00 | 0.00 | 195.50 | 195.50 | |
|   ADALBERTO | 0.00 | 0.00 | 0.00 | 0.00 | 99.70 | 99.70 | |
|   MARIA PARAMO | 0.00 | 0.00 | 0.00 | 0.00 | 52.30 | 52.30 | |
|   PRISCA | 0.00 | 0.00 | 0.00 | 0.00 | 18.84 | 18.84 | |
| Total EMPLOYEE | 0.00 | 0.00 | 0.00 | 0.00 | 366.34 | 366.34 | |
| Gourmet Express | 2,779.65 | 1,888.27 | 0.00 | 0.00 | 0.00 | 4,667.92 | |
| KJ's Cafes | 0.00 | 0.00 | 0.00 | 0.00 | 212.88 | 212.88 | |
| La Casita Chilangas | | | | | | | |
|   #1 - Redwood City | 2,592.00 | 9,252.00 | 9,828.00 | 10,020.90 | 46,923.54 | 78,616.44 | they have $55k credit |
| Total La Casita Chilang | 2,592.00 | 9,252.00 | 9,828.00 | 10,020.90 | 46,923.54 | 78,616.44 | |
| Los Moreno | 0.00 | 145.20 | 0.00 | 0.00 | 0.00 | 145.20 | |
| Lunardi's Market | 4,541.87 | 2,150.69 | 545.47 | 352.17 | -1,944.27 | 5,645.93 | |
| The Market at Edgewo | 1,017.42 | 0.00 | 0.00 | 0.00 | 0.00 | 1,017.42 | |
| Market on Market | 0.00 | 0.00 | 0.00 | 0.00 | -4,812.23 | -4,812.23 | |
| Milk Pail | 2,265.90 | 0.00 | 0.00 | 0.00 | 0.00 | 2,265.90 | |
| New Joe's | 0.00 | 467.85 | 0.00 | 0.00 | 491.86 | 959.71 | |
| Palo Alto Cafe | 479.18 | 421.10 | 0.00 | 0.00 | 0.00 | 900.28 | |
| Peninsula Catering | 0.00 | 0.00 | 0.00 | 0.00 | 97.88 | 97.88 | |

| | Current | 1 - 30 | 31 - 60 | 61 - 90 | > 90 | TOTAL |
|---|---|---|---|---|---|---|
| **Piazza's Fine Foods** | | | | | | |
| Palo Alto | 0.00 | 0.00 | 0.00 | 0.00 | -63.35 | -63.35 |
| Piazza's Fine Foods | 0.00 | 0.00 | 0.00 | 0.00 | -25.00 | -25.00 |
| **Total Piazza's Fine Foo** | 0.00 | 0.00 | 0.00 | 0.00 | -88.35 | -88.35 |
| **Safeway Community M** | 1,654.77 | 97.72 | 239.84 | 166.61 | 764.55 | 2,923.49 |
| **Salvador Oteiza** | 15.20 | 45.60 | 0.00 | 0.00 | 0.00 | 60.80 |
| **Sigona's** | | | | | | |
| Palo Alto | 183.92 | 251.68 | 529.54 | 125.84 | 677.60 | 1,768.58 |
| RWC | 198.10 | 866.30 | 291.88 | 0.00 | 836.42 | 2,192.70 |
| **Total Sigona's** | 382.02 | 1,117.98 | 821.42 | 125.84 | 1,514.02 | 3,961.28 |
| **Snacks** | -187.00 | 0.00 | 0.00 | 0.00 | 0.00 | -187.00 |
| **The Sandwich Bug** | 0.00 | 325.00 | 0.00 | 0.00 | 0.00 | 325.00 |
| **Tony's Fine Foods** | 3,705.24 | 0.00 | 0.00 | 0.00 | 348.48 | 4,053.72 |
| **Whole Foods Market** | 0.00 | 0.00 | 0.00 | 0.00 | -1,042.87 | -1,042.87 |
| **TOTAL** | 18,839.40 | 18,891.25 | 11,434.73 | 10,726.37 | 42,791.98 | 102,683.73 |

TAB "F"

FILED & ENTERED

MAR 14 2011

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No. 2:10-bk-11181 ER |
| Dan Haggerty's International Products, Inc., d/b/a Precision Grilles, | Chapter 11 |
| | **MEMORANDUM OF DECISION** |
| | Date:  February 2, 2011 |
| | Time:  10:00 A.M. |
| Debtor. | Place:  Ctrm. 1568, 15th Fl. |
| | 255 E. Temple Street |
| | Los Angeles, CA 90012 |

On February 2, 2011, the Court held a hearing on Confirmation of the Debtor's First Amended Chapter 11 Plan ("Plan")(Dkt. # 108). Appearances were as stated on the record.

**I.     Facts and Procedural Background**

ABCO objects to confirmation of the Debtor's Plan for several reasons. First, ABCO contends that the Plan cannot be confirmed as it fails to satisfy the requirements of § 1129(a).

Section 1129(a)(1) provides that a plan may be confirmed only if it complies with applicable provisions of the Bankruptcy Code. If a plan fails to comport with § 524(e), it cannot be in compliance with applicable provisions of the Code. Article XII of the Debtor's plan provides:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*The order confirming the plan (or the plan as amended) shall act as a temporary injunction restraining any creditor, party-in-interest or any third party from pursuing any officer, director or shareholder of the Debtor on account of any claim based on a guaranty for so long as the Debtor is making payments pursuant to the Plan.*

*On Plan confirmation, all creditors having an Allowed Claim shall be temporarily enjoined, pursuant to 11 U.S.C. §105, from proceeding against any officer, director, shareholder, employee, or other responsible person of Debtor, individually, or in an official capacity, to collect all or any portion of an Allowed Claim. This injunction is to remain in effect only so long as the Debtor complies with the terms of the Plan concerning payment of claims. Should the Debtor be in violation of Plan payment terms and the violation remains uncured for a period of 30 days after receipt by Debtor of written notice from any party affected by such violation, the affected party may apply to the Bankruptcy Court to dissolve the temporary injunction as to the affected party. The Bankruptcy Court shall have exclusive jurisdiction to extinguish or modify the temporary injunction.*

*To the extent they may have any liability, officers, guarantors, and directors shall not be discharged or released from any liability for such claims and debts under the Plan, however, absent further order of the Court, the exclusive remedy for payment of any claim or debt so long as the plan is not in default as described above shall be payment through the Plan. The temporary injunction is not meant to discharge any third party's liabilities.*

The Court's February 1, 2011 Tentative Ruling denied confirmation of the Debtor's Plan on the basis that the temporary injunction provision "runs afoul of § 524(e)" and therefore the Plan could not be confirmed with the inclusion of this provision.  However,  at the conclusion of the February 2 hearing, the Court took the matter under submission for further review.   After

1    careful review and analysis, the Court vacates the Tentative Ruling and makes the following

2    findings and conclusions.

3

4    **II.    Discussion**

5         **A.    <u>The Power of the Court to Affect Third Party Liability</u>**

6         A bankruptcy court is endowed with the power, pursuant to 11 U.S.C. § 105(a), to "issue

7    any order, process, or judgment that is necessary or appropriate to carry out the provisions of this

8    title." In *In re Rohnert Park Auto Parts, Inc.*, 113 B.R. 610 (9th Cir. B.A.P. 1990), the BAP

9    found that § 105(a) did not give the bankruptcy court authority to approve a plan provision for

10   the release of non-debtors. The BAP ultimately held that the plan at issue violated § 524(e),

11   which states that the discharge of the debtor does not affect the liability of any other entity. *Id.* at

12   615-17. Similarly, in *Coronado City Views, LLC v. Regatta Bay, LLC (In re Regatta Bay, LLC)*,

13   2009 U.S. Dist. LEXIS 124995 (D. Ariz. Oct. 30, 2009), the District Court held that a plan

14   provision that would temporarily enjoin creditors from collection efforts against non-debtor

15   parties post-confirmation was prohibited. The Court reasoned that, because the injunction would

16   affect the liability of the non-debtor parties, it would violate § 524(e). *Id.* at *12.

17

18        However, the Court does not find the reasoning in those decisions persuasive, because it

19   is not rooted in a plain reading of the statutory language. Section 524(e) reads, in pertinent part,

20   "…*discharge* of a debt of the debtor does not affect the liability of any other entity on, or the

21   property of any other entity for, such debt" (emphasis added). Based upon a plain reading of the

22   language of § 524(e), it is apparent that other courts have misinterpreted this section to be

23   overbroad when in fact it very narrowly relates only to the discharge. In this case, there is no

24   nexus between the discharge of the Debtor and the issuance of the temporary injunction. Simply

25   because the discharge provision of the Bankruptcy Code *does not* affect third party liability does

26   not mean that the court *cannot* use § 105(a) to create such an effect, so long as it is not in direct

27   conflict with another provision of the Code. Therefore, a bankruptcy court has the power to

28

issue an order affecting the liability of non-debtor third parties, under § 105(a), because such an order does not conflict with § 524(e).

Alternatively, the Court finds that the temporary injunction in this case does not even affect the *liability* of non-debtors on the Guaranty.  Though the plan—if confirmed—would temporarily enjoin Creditor ABCO ("ABCO") from pursuing third party non-debtor Robert Rester ("Rester") for those sums being paid to it under the Plan, Rester's ultimate liability to ABCO on the Guaranty is not affected.  If the Reorganized Debtor defaults on the Plan, the temporary injunction would terminate and ABCO would be free to pursue Rester on the Guaranty for any amounts owed.  Furthermore, if any portion of ABCO's claim is not allowable in this bankruptcy case, but is otherwise recoverable pursuant to the Guaranty, ABCO would be free to pursue Rester for any amounts not being paid under the Plan.  Therefore, the temporary injunction does not affect the liability of non-debtors on the Guaranty, and is consequently *not* in violation of § 524(e) of the code, even if this Court were to adopt the holding in *Rohnert Park*. *See In re Seatco, Inc.*, 257 B.R. 469, 475 (N.D. Tex. Bankr. 2001) (holding that a temporary injunction in a plan did not affect the *liability* of non-debtors on the Guaranty).

## B.    The Unusual Circumstances Test

Based on the foregoing, the Court concludes that a temporary injunction prohibiting a creditor's suit against a non-debtor during the bankruptcy case is permissible in order to facilitate the reorganization process in accord with § 105, though only under unusual circumstances. *See In re Zale*, 62 F.3d 746, 761 (5th Cir. 1995) (dicta).  "These circumstances include (1) when the non-debtor and the debtor enjoy such an identity of interest that the suit against the non-debtor is essentially a suit against the debtor, and (2) when the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization.  When either of these circumstances occur, an injunction may be warranted." *Id.*

In this case, the Debtor has satisfied the unusual circumstances test.  Rester guaranteed payment of the Debtor's obligations to ABCO. Debtor and Rester enjoy an identity of interest

such that a suit against Rester is a suit against the Debtor.  Rester has testified that if the temporary injunction was not permitted, he would be forced to focus on the litigation and raise monies for defense from any source possible, including the Debtor. <u>Rester Declaration Supporting Confirmation</u>, at 7. The resulting financial drain on the Debtor would affect plan payments as well as Rester's ability to focus on the Debtor's business. Further, Rester asserts that if he were to lose his stock in the Debtor as a result of a judgment entered in the litigation, the business would ultimately fail because it depends on his knowledge and contacts in the industry. <u>Id.</u> Thus, an action against Rester would have an adverse impact on the Debtor's ability to reorganize.

## C.    <u>Standard for Imposing Injunctive Relief</u>

Lastly, the Court must also consider the four factors governing the issuance of temporary injunctions.  The factors are as follows: "(1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that the movant will suffer irreparabble injury if the injunction is not granted; (3) that the threatened injury to the movant outweighs the threatened harm an injunction may cause to the party opposing the injunction; and (4) that the granting of the injunction will not disserve the public interest." *See Commonwealth Oil Ref. Co. v. U.S.E.P.A. (In re Commonwealth Oil Ref. Co.)*, 805 F.2d 1175, 1189 (5th Cir. 1986).

### (1) Reasonable Likelihood of Reorganization

In the Court's February 2, 2011 Tentative Ruling, it states that "[b]ased on the Debtor's cash flow projections and the Debtor's historical cash flow, the Court is not convinced that the Debtor will be able to meet its obligations under the Plan." However, the Court is persuaded by the fact that all voting creditors, aside from ABCO, have now voted in favor of the Debtor's Plan. The creditors' confidence in the Debtor's reorganization reassures the Court that the parties most at risk believe that the Debtor can reorganize and emerge from this case in a financially sound manner.

1    Further, this standard "is not a high burden for the debtor." *In re Excel Innovations*, *Inc.*,

2    502 F.3d 1086, 1097 (9th Cir. 2007). Where all creditor classes agreed with the Debtor's Plan, as

3    is the case here, the court found this standard was met. *In re Linda Vista Cinemas*, *LLC*, 2010

4    Bankr. LEXIS 4259,  at *19 (Bankr. Dist. Ariz. November 24, 2010).  However, because the

5    Court still has some doubts about the likelihood of the Debtor's successful reorganization, it

6    concludes that this factor does not weigh for or against approving the temporary injunction.

7    **(2) Irreparable Injury to the Movant**

8
9    Without the temporary injunction, the Debtor's reorganization will be significantly

10    jeopardized, as Rester may need to drain the Debtor in order to fund his defense to the litigation.

11    Rester Declaration Supporting Confirmation, at 7. Further, Rester himself may end up in Chapter

12    7 proceedings because other than his stock interest in the Debtor and a house with no equity, he

13    has minimal assets to defend against collection efforts. Brief in Support of Confirmation, at 18. If

14    a creditor were to acquire a judgment against Rester, and foreclose on his stock interest in the

15    Debtor, Rester would likely cease involvement with the Debtor. Id. at 2. Because Rester is

16    essential to the successful reorganization of the Debtor, the Court finds that if the temporary

17    injunction is not issued, there is a substantial threat of irreparable injury to the Debtor. This

18    weighs in favor of approving the temporary injunction.

19    **(3) Injury to the Movant Outweighs Harm to Enjoined Parties**

20
21    Although the Court has determined that substantial harm may result to the Debtor absent

22    the temporary injunction, this harm must be balanced against the harm that may result to the

23    enjoined parties as a consequence of the injunction. The Court's February 1, 2011 Tentative

24    Ruling stated that:

25    *Finally, the five-year injunction provided for in the Plan, extends until well after the*

26    *expiration of the four-year statute of limitations for claims based on a written*

27    *guaranty. Thus, the Court finds that the injunction in this case operates as a* de facto

28

-6-

*discharge and thus, the equities do not weigh in favor of approving the Plan with the inclusion of this provision.*

Contrary to the Court's Tentative Ruling, it became clear at the February 2, 2011 hearing that the statute of limitations would not act as a *de facto* discharge because ABCO has already commenced state court litigation against Rester. Further, the state court will toll the statute of limitations during the period the temporary injunction is in effect. *See* CAL. CIV. PROC. CODE § 583.340(b) (Deering 2011)(stating that "[i]n computing the time within which an action must be brought to trial pursuant to this article, there shall be excluded the time during which any of the following conditions existed…(b)[p]rosecution or trial of the action was stayed or enjoined.") As a result, the Court's prior concern that the temporary injunction would cause severe detriment to the enjoined parties is non-existant.

The Court does acknowledge that the enjoined parties will be delayed in their ability to pursue Rester for their claims and will receive minimal distribution on their claims under the Plan. However, in a liquidation, these creditors would receive  no distribution from the Debtor and very little, if anything, from Rester. Brief in Support of Confirmation, at 18. Under the Plan, they stand to receive approximately 7.5%. First Amended Plan, at 10. Additionally, in the event there is a default under the Plan that remains uncured, the injunction will be dissolved and the enjoined creditors are free to pursue Rester. Also, as previously discussed, Rester's ultimate liability to the enjoined parties remains unaffected by the Plan. Based on these considerations, the Court concludes that the harm to the Debtor, the inability to reorganize, outweighs the harm to the enjoined parties. Because the temporary injunction will ensure at least some benefit to the enjoined creditors, the Court finds that the balance of hardships weighs in favor of the injunction.

### (4) Public Policy

The temporary injunction will facilitate the Debtor's successful reorganization, which serves the public interest. Public policy favors fewer reorganizations, which means that

stabilizing the Debtor and increasing the likelihood of its successful reorganization is in the public interest. *See In re Linda Vista Cinemas*, *LLC*, 2010 Bankr. LEXIS 4259,  at *20. This factor weighs in favor of the temporary injunction.

**III.     Conclusion**

For the above reasons, the Court concludes that the temporary injunction provided in the Debtor's First Amended Plan is proper, and ABCO's objection to confirmation on these grounds is OVERRULED. A continued confirmation hearing will be held on April 26, 2011 at 10:00am to address ABCO's remaining objections to confirmation. The Court will enter an order consistent with this Memorandum of Decision.

DATED: March 14, 2011

_____
United States Bankruptcy Judge